PAUL OVERTON, JR. v. GOLDSBORO CITY BOARD OF EDUCATION

No. 38

(Filed 3 November 1981)

**1. Schools § 13.2— teacher dismissal—standard for judicial review**

The standards for judicial review set forth in G.S. 150A-51 govern an appeal from a city board of education's dismissal of a career teacher, and the issue presented by the appeal in this case is whether the decision of the board is supported by substantial evidence in view of the whole record, G.S. 150A-51(5).

**2. Schools § 13.2— teacher dismissal for neglect of duty**

Dismissal of a career school teacher for "neglect of duty" under G.S. 115-142(e)(1)(d) cannot be sustained unless it is proven that a reasonable man under those same circumstances would have recognized the duty and would have considered himself obligated to conform.

**3. Schools § 13.2— criminal charges against teacher—failure to teach classes—dismissal for neglect of duty—insufficient evidence**

Plaintiff career teacher's conduct in staying away from school pending resolution of criminal charges against him did not constitute "neglect of duty" within the meaning of G.S. 115-142(e)(1)(d) where the evidence showed that plaintiff was indicted on felony drug charges; plaintiff promptly notified his principal that he was in trouble and would be absent from school; plaintiff remained in close contact with the school superintendent and told the superintendent that he would remain away from the classroom until the matter had been resolved because he felt it would be in the students' best interest; the superintendent never instructed plaintiff to return to school or indicated that his absence could give the board of education cause to dismiss him; the superintendent testified that he agreed that it would be better for plaintiff to remain away from the classroom while the charges against him were pending; plaintiff made a request for leave of absence without pay but the board of education never acted upon such request; and prior to the criminal charges plaintiff's record of performance as a teacher was unblemished for the seventeen years he had been employed by defendant board of education.

ON appeal as a matter of right by defendant from the decision of the Court of Appeals reported at 51 N.C. App. 303, 276 S.E. 2d 458 (1981), one judge dissenting, affirming judgment entered by *Peel, Judge,* at the 28 April 1980 Session of Superior Court, WAYNE County.

By this appeal we consider the adequacy of evidence necessary to establish "neglect of duty," as used in G.S. 115-142(e)(1)(d), as a ground for dismissal of a career public school teacher employed by a city school board.

*Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A.,
by James C. Fuller, Jr., for plaintiff-appellee.*

*Taylor, Warren, Kerr & Walker, by Lindsay C. Warren, Jr.,
and Gordon C. Woodruff, for defendant-appellant.*

CARLTON, Justice.

I.

Plaintiff, a career public school teacher with over fifteen
years of service in the North Carolina public schools, initiated
this action to contest his dismissal by defendant for "neglect of
duty." In his complaint he sought reversal of the order of the
Goldsboro City Board of Education (hereinafter "Board") and
reinstatement to his position as a career teacher. He also prayed
for back pay, costs and attorney's fees incurred in bringing this
action. The events which led to his dismissal by the Board are as
follows:

On 24 April 1979 plaintiff was employed by defendant as a
physical education teacher at Middle School South. That morning
he learned from a radio news announcement that he had been in-
dicted by a Wayne County grand jury on felony drug charges.
After contacting his minister, plaintiff called the school principal,
William Charlton, and informed him that he, plaintiff, was in trou-
ble and would not be at work that day and possibly not for the
rest of the year. He requested that Charlton retain a teacher to
substitute in his classes. Later that morning Charlton relayed
plaintiff's message to the Superintendent of the Goldsboro City
Schools, William Johnson. During the course of the day Charlton
and Johnson learned of the charges against plaintiff.

On 26 April 1979 plaintiff met with Superintendent Johnson
to inform him of the charges and to profess his innocence.
Johnson reviewed with plaintiff the statutes governing teacher
dismissal. Plaintiff told Johnson that he was placing his fate in
the hands of the Board and had confidence in so doing. Johnson
neither instructed plaintiff to resume his teaching responsibilities
nor did he indicate approval of plaintiff's absence. During this
meeting plaintiff indicated to Johnson that he thought it would be
in the best interest of his students if he did not return to school
until his name had been cleared.

On 3 May 1979 plaintiff again met with Superintendent Johnson. At this meeting Johnson informed plaintiff that the Goldsboro City Board of Education had met to discuss plaintiff's case and had requested that plaintiff submit his resignation by noon on 8 May 1979. Although plaintiff asked why his resignation was being requested Johnson told him only that "we felt we did need his resignation." Nothing was said to plaintiff about neglect of duty. Johnson did not instruct him to return to school, nor did he inform plaintiff that dismissal procedures would be initiated if his resignation was not received by noon on 8 May 1979. At either the 3 May meeting or the 26 April meeting plaintiff did request a leave of absence without pay. Although Mr. Johnson never instructed plaintiff to return to or to stay away from school, he did agree with plaintiff that it would be better for plaintiff not to be in the classroom while the charges were pending.

Plaintiff did not submit his resignation but, instead, requested in a letter dated 8 May 1979, addressed to Superintendent Johnson, that he be granted a leave of absence without pay pending the disposition of the drug charges. Johnson received the letter on 9 May 1979.

On 10 May 1979 the school board met and, upon Mr. Johnson's recommendation, voted to suspend plaintiff without pay and to initiate dismissal proceedings. The Board was informed of plaintiff's request for leave of absence without pay.

On 16 May 1979, Mr. Johnson informed plaintiff by letter of the Board's action. This letter was the first notice given to plaintiff that his absence was considered a neglect of duty.

Upon notice of the Board's action, plaintiff requested a hearing before a panel of the Professional Review Committee (hereinafter "Committee") pursuant to his rights under G.S. 115-142(h). That Committee held a hearing on 5 July 1979. The Committee heard evidence on the charges of inadequate performance and neglect of duty as grounds for dismissal. During the hearing the charge of inadequate performance was dropped. The Committee found the facts essentially as noted above and concluded that the charge of neglect of duty "[was] not true and substantiated." The Committee, in its Report, stated: "Mr. Overton made good faith efforts to communicate with his superintendent and

principal and to cooperate with them. He was not told that he should return to the classroom under these circumstances. A reasonable man could assume that his continued absence was approved until he was instructed otherwise."

Despite the conclusion of the Committee that plaintiff had not neglected his duty, Superintendent Johnson pursued the dismissal proceedings and recommended to the Board that plaintiff be dismissed. At plaintiff's request, the Board held a hearing on 10 December 1979 to review the charges against him. Based on the evidence presented at the hearing, the Board found as fact that plaintiff voluntarily had absented himself from school without permission and that he had not requested sick leave or personal leave. Although the Board also found that plaintiff was never instructed to return to his teaching duties, it found that his failure to report to school constituted a neglect of duty and concluded that, because of his contract, the plaintiff should have been aware of his duty to report to school regardless of his personal problems. The Board concluded that the charge of neglect of duty was true and substantiated and that plaintiff should be dismissed. Based on these findings and conclusions, the Board ordered plaintiff's dismissal.

From the order of the Board plaintiff appealed to the Superior Court, Wayne County, pursuant to G.S. 115-142(n) (1978) by filing notice of appeal on 16 January 1980. With his notice plaintiff filed a complaint requesting that the court reverse the Board's order, that he be reinstated as a career teacher with tenure, and that he recover back pay, costs and attorney's fees. The appeal was heard by Judge Peel at the 28 April 1980 Session of Superior Court, Wayne County. After reviewing the Board's order, the transcript of the hearing before the Board and the report of the Professional Review Committee, Judge Peel concluded "that the charges brought by the Superintendent against the petitioner/appellant are not substantiated" and reversed the decision of the Board. No mention was made in Judge Peel's order of plaintiff's request for reinstatement, back pay, costs and attorney's fees. The Board excepted to the order and gave notice of appeal.

On appeal, the Court of Appeals affirmed the order of the Superior Court. After setting out the "whole record" standard of

review for appeals from administrative agencies, the court reviewed the evidence to determine whether the decision of the Board was "[u]nsupported by substantial evidence . . . in view of the entire record as submitted," G.S. § 150A-51(5) (1978). The Court of Appeals first noted the uncontroverted evidence concerning events prior to the dismissal: that prior to April 1979 plaintiff's performance as a teacher had always been rated satisfactory; that plaintiff had maintained close contact with school officials during the period from 24 April to 10 May 1979, when dismissal proceedings were initiated; that no school official instructed plaintiff to return to work; that although it was the normal practice to give an employee an opportunity to correct the problem before seeking dismissal, plaintiff was never so warned. Based on a review of the entire record, Judge Hill concluded that the decision to dismiss plaintiff was not supported by substantial evidence. Judge Webb concurred.

In his dissent, Judge Hedrick argued that Judge Peel had employed the incorrect standard of review and had substituted his judgment for that of the Board. He voted to vacate Judge Peel's order and to remand to the superior court for review under the appropriate standard.

Defendant appeals to this Court from the decision of the Court of Appeals as a matter of right pursuant to G.S. 7A-30(2) (1969).

II.

[1] We first determine the appropriate standard of judicial review. Plaintiff appealed the Board's action to the superior court pursuant to the provisions of G.S. 115-142(n) (1978). That statute, however, provides no standards for review. We find no standards for judicial review for an appeal of a school board decision to the courts set forth in Chapter 115 of our General Statutes. Moreover, we note that G.S. 150A-2(1) expressly excepts county and city boards of education from the coverage of the Administrative Procedure Act (APA), Chapter 150A, N.C. General Statutes. However, this Court held in *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977), that the standards for judicial review set forth in G.S. 150A-51 are applicable to appeals from school boards to the courts. Since no other statute provides guidance for judicial review of school

board decisions and in the interest of uniformity in reviewing administrative board decisions, we reiterate that holding and apply the standards of review set forth in G.S. 150A-51 (1978).[1]

Hence, as stated by the Court of Appeals, the issue presented by this appeal is whether the decision of the Board dismissing plaintiff is unsupported by substantial evidence in view of the whole record, G.S. § 150A-51(5) (1978). Although the language in Judge Peel's order is not lifted verbatim from the statute, we agree with the Court of Appeals that his statement that "the charges . . . are not substantiated" is merely a paraphrase of G.S. 150A-51(5). Therefore, our review is limited to determining whether the superior court and the Court of Appeals correctly decided that the Board's decision was not supported by substantial evidence.

The standard of review set forth in G.S. 150A-51(5) has come to be known as the "whole record" test. In explaining what is involved in "whole record" review under the statute which governed judicial review prior to enactment of the APA, Justice Copeland stated:

> This standard of judicial review is known as the "whole record" test and must be distinguished from both *de novo* review and the "any competent evidence" standard of review. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 95 L.Ed. 456, 71 S.Ct. 456 (1951); *Underwood v. Board of Alcoholic Control*, 278 N.C. 623, 181 S.E. 2d 1 (1971); Hanft, *Some Aspects of Evidence in Adjudication by Administrative Agencies in North Carolina*, 49 N.C. L. Rev. 635, 668-74 (1971); Hanft, *Administrative Law*, 45 N.C. L. Rev. 816, 816-19 (1967). The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*, Universial Camera Corp., *supra.* On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the

---

1. We wish to make it clear that only G.S. 150A-51 is applicable to appeals from decisions of city or county boards of education. Neither this case nor *Thompson* is to be interpreted as holding that any other provision contained in the APA applies to actions of city or county boards of education or appeals therefrom.

Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn. [Citation omitted.]

*Thompson v. Wake County Board of Education*, 292 N.C. at 410, 233 S.E. 2d at 541. Thus, in deciding this appeal, we will consider all of the evidence, both that which supports the decision of the Board and that which detracts from it to determine whether the finding that plaintiff neglected his duty, the ground on which the dismissal was based, is supported by substantial evidence.

## III.

The statute which governs the employment and dismissal of career teachers in our public schools, G.S. § 115-142 (1978 & Supp. 1979), provides that a career teacher may be dismissed or demoted only for certain specified reasons. See G.S. § 115-142(e) (Supp. 1979). In part, this subsection provides: "(1) No career teacher shall be dismissed or demoted or employed on a part-time basis except for: . . . d. neglect of duty . . . ." The term "neglect of duty" is nowhere defined in our statutes nor has this Court endeavored to define it. However, the Court of Appeals indicated in *Thompson v. Wake County Board of Education*, 31 N.C. App. 401, 230 S.E. 2d 164 (1976), *rev'd on other grounds*, 292 N.C. 406, 233 S.E. 2d 538 (1977) (insufficient evidence), that the term encompasses failure to maintain classroom order.

Our review of cases from our sister states reveals that the term "neglect of duty" is uniformly accorded a common sense definition: failure to perform some duty imposed by contract or law. *See, e.g., State ex rel. Hardie v. Coleman*, 115 Fla. 119, 155 So. 129 (1934); *State ex rel. v. Ward*, 163 Tenn. 265, 43 S.W. 2d 217 (1931); *State ex rel. Knabb. v. Frater*, 198 Wash. 675, 89 P. 2d 1046 (1939). In *Ward*, the Tennessee Supreme Court stated, "The terms 'malfeasance' and 'neglect of duty' are comprehensive terms and include any wrongful conduct that affects, interrupts or interferes with the performance of official duty." 163 Tenn. at 266, 43 S.W. 2d at 219. The Florida courts have also adopted a functional definition of the term: "Neglect of duty has reference

to the neglect or failure on the part of a public official to do and perform some duty or duties laid on him as such by virtue of his office or which is required of him by law." *State ex rel. Hardie v. Coleman*, 155 So. at 132. Although the term is susceptible to definition, it is, as a California appellate court said, "an abstraction until viewed in light of the facts surrounding a particular case," *Gubser v. Department of Employment*, 271 Cal. App. 2d 240, 242, 76 Cal. Rptr. 577, 579 (1969). With a general definition of the term in mind, we now examine the facts of this particular case to determine whether plaintiff neglected his duty by failing to report to school.

It requires no citation of authority to state that one of the basic duties of a public school teacher, or any employee, is to appear for work. Under the terms of his contract with the defendant Board, plaintiff agreed to teach through the end of the 1978-79 school year and, thus, had a duty to present himself for work. Clearly, failure to report for work may constitute "neglect of duty."

[2] The Board argues in essence that defendant's failure to appear for work for reasons other than illness without the express permission of the Superintendent constitutes, *ipso facto*, a neglect of duty within the meaning of the statute. We disagree. Regardless of the circumstances to which "neglect of duty" is sought to be applied, we think that dismissal under the statute on this ground alone cannot be sustained unless it is proven that a reasonable man under those same circumstances would have recognized the duty and would have considered himself obligated to conform.

The evidence before the Board, on most relevant points, was not in conflict. All parties agree that plaintiff promptly notified his principal, Mr. Charlton, that he was in trouble and would be absent from school and that he remained in close contact with Superintendent Johnson, meeting with him on 26 April and on 3 May. At both of these meetings plaintiff told Superintendent Johnson that he would remain away from the classroom until the matter had been resolved because he felt it would be in the students' best interest. Superintendent Johnson never instructed plaintiff to return to school or indicated that his absence could give the Board cause to dismiss him. Indeed, Mr. Johnson

testified before the Board that he agreed that it would be better for plaintiff to remain away from the classroom while the charges against him were pending. And, at either the 26 April or 3 May meeting, plaintiff discussed a leave of absence without pay. His request was not granted. At the 3 May meeting, Superintendent Johnson informed plaintiff that the Board had requested his resignation. No reason for the request was given and neglect of duty wasn't mentioned. In a letter dated 8 May 1979 addressed to Superintendent Johnson, plaintiff formally requested a leave of absence. This request, although submitted to the Board, was never acted upon by it, and on 10 May 1979 it adopted a resolution suspending plaintiff without pay on the ground of neglect of duty. Plaintiff was notified of the resolution by letter dated 16 May; this was plaintiff's first notice that his absence was considered a neglect of duty. Prior to the criminal charges plaintiff's record of performance as a teacher was unblemished for the seventeen years he had been employed by the Board. Superintendent Johnson explained that plaintiff's indeterminate length of absence created a problem in finding substitutes although a substitute was procured by the school for all the school days prior to plaintiff's suspension.

[3]  Taking into account the evidence which supports the Board's action and that which detracts from it, we find that the Board's conclusion that plaintiff neglected his duty by absenting himself from his job as a school teacher while criminal charges were pending against him is unsupported by substantial evidence in view of the entire record as submitted and, for that reason, we agree with Judge Peel's order reversing the Board's decision. Indeed, we find that all of the evidence before the Board supports the conclusion that plaintiff acted reasonably in choosing to stay away from the classroom and that his voluntary continued absence was the most prudent course of action. We agree fully with the finding of the Professional Review Committee that "[a] reasonable man could assume that his continued absence was approved until he was instructed otherwise." As we stated in *Thompson*, "[w]hile the panel report is not determinative, it is entitled to some weight in a review of the entire record." 292 N.C. at 414, 233 S.E. 2d at 543. We hold that plaintiff's conduct in staying away from school pending resolution of the criminal charges against him did not constitute a neglect of duty within the meaning of G.S. 115-142(e)(1).

This result does not conflict with the cases cited to us by the Board. In *Miller v. Noe*, 432 S.W. 2d 818 (Ky. App. 1968), plaintiff took an indeterminate voluntary leave of absence to work for the American Federation of Teachers without the consent of the school board. Upon his return to the teaching profession he was denied a job and sued to regain his teaching position. The trial court denied his claim and, on appeal, the Court of Appeals of Kentucky affirmed, holding that "an act of resignation occurred when the teacher took an indeterminate voluntary leave of absence without the consent of the Board." *Id.* at 818. Important to the holding of this case, however, was the express denial of the plaintiff's request for a leave one month prior to the date on which he stopped teaching.

This factor was likewise present in *Fernald v. City of Ellsworth Superintending School Committee*, 342 A. 2d 704 (Me. 1975). There, plaintiff left school after her request for a leave had been denied and she was dismissed. Her dismissal for taking an unauthorized leave was upheld on the ground that her services were unprofitable to the school board.

Similarly, the plaintiff in *Evard v. Board of Education of City of Bakersfield*, 64 Cal. App. 2d 745, 149 P. 2d 413 (1944), was dismissed for taking an indeterminate leave of absence after the local school board had denied her request. The court of appeals upheld her dismissal on the ground of unprofessional conduct. The court stressed that plaintiff knew that her absence was unauthorized and that plaintiff could not reasonably have believed that her absence would be forgiven.

Other cases cited by the defendant Board are of like import. In all of these cases, regardless of the stated ground for dismissal, the courts emphasized that the plaintiff had taken the leave with full knowledge that the local board had disapproved the request. In this case, plaintiff's request for a leave was never acted on; the only response was a request for his resignation. Moreover, the Superintendent seemed to agree with plaintiff that his course of action was the proper one under the circumstances.

We do not intend to imply that neglect of duty based on unauthorized leave can never take place in the absence of a prior denial of a request for leave. There may be circumstances under which a reasonable person would know that his actions would be

disapproved, and such actions may constitute neglect of duty. Here, we decide only that the question must be decided on a case-by-case basis with the guidance of the general principles noted above.

Finally, we agree with Judge Hedrick that it is not the function of a court to substitute its judgment for that of an administrative agency when reasonably conflicting views are presented. However, under G.S. 150A-51(5) the evidence in support of the Board's decision must be *substantial.* "The 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *In re Rogers,* 297 N.C. 48, 65, 253 S.E. 2d 912, 922 (1979); *see Commissioner of Insurance v. N.C. Rate Bureau,* 300 N.C. 381, 430, 269 S.E. 2d 547, 578 (1980). Here, for the reasons stated above, we must conclude that the Board's decision is not supported by substantial evidence and therefore must be reversed.

Plaintiff's complaint requested relief in the form of reinstatement with tenure, back pay, costs and attorney's fees. Judge Peel merely reversed the Board's decision. The question of appropriate relief was not addressed and therefore is not before us. On remand, the Board will proceed as provided by law. We express no opinion on plaintiff's entitlement to reinstatement with tenure, costs and attorney's fees; however, by his request for a leave of absence pending ultimate resolution of the criminal charges, which has not occurred as of this writing, plaintiff has waived any right to collect back wages.

V.

We note our awareness that, for all practical purposes, this decision may appear moot. If plaintiff's criminal convictions are ultimately affirmed, the Board may dismiss him on that ground. G.S. 115-142(e)(1)g. Moreover, as noted above, plaintiff will not be entitled to back wages in any event.

We are also fully aware of the difficult situation confronting the school board and that our Legislature has not provided school boards a workable method for dealing with these problems. We are not inadvertent to the circumstances surrounding plaintiff's dismissal. This Board had the commendable intention of ensuring

that no person involved in violation of drug laws would be allowed to teach the children of Goldsboro. Such an intention can only be applauded. Granted, the decision of the three courts which have now reviewed the board's action are based on what the general public perceives as a "technicality." Nevertheless, it is the function of the courts to enforce the requirements of the law. This is so not just for the benefit of this plaintiff, but for others who may appear more deserving.

In summary, we conclude that the order of the Board dismissing plaintiff for neglect of duty must be vacated because the Board's findings and conclusions are unsupported by substantial evidence in view of the entire record as submitted, G.S. § 150A-51(5), and plaintiff's rights have been prejudiced thereby. Therefore, the decision of the Court of Appeals affirming the reversal of the Board's order by the Superior Court, Wayne County, is

Affirmed.