TERRY FAULKNER v. NEW BERN-CRAVEN COUNTY BOARD OF EDUCATION

No. 823SC1222

(Filed 20 December 1983)

1. **Schools § 13.2— teacher dismissal—whole record test—consideration of Professional Review Committee panel's report**

   In reviewing the whole record to determine whether there was substantial evidence to support a board of education's findings of fact and conclusions in dismissing a career teacher, the appellate court must consider the panel report of the Professional Review Committee finding the allegations against respondent to be unsubstantiated. G.S. 150A-51.

**2. Schools § 13.2— teacher dismissal—excessive user of alcohol—insufficient evidence**

The evidence was insufficient to support a school board's decision to dismiss a career teacher because the teacher is an "habitual and/or excessive user of alcohol." G.S. 115C-325(e)(1)(f).

**3. Schools § 13.2— teacher dismissal—failure to fulfill duties—insufficient evidence**

The evidence was insufficient to support a school board's decision to dismiss a career teacher for "failure to fulfill the duties and responsibilities imposed on teachers by the General Statutes of this State." G.S. 115C-325(e)(1)(i).

APPEAL by plaintiff from *Reid, Judge.* Judgment entered 13 August 1982 in Superior Court, CRAVEN County. Heard in the Court of Appeals 19 October 1983.

Plaintiff was a "career teacher" as defined by G.S. 115C-325(c). He had been teaching in the New Bern, and later the New Bern-Craven County, school system since 1969. In 1981 he was teaching seventh grade language arts at the H. J. MacDonald School. On 17 September 1981, the New Bern-Craven County Board of Education (hereinafter Board), upon the recommendation of the Superintendent of the New Bern-Craven County Schools (hereinafter Superintendent), voted by unanimous resolution to suspend plaintiff from his teaching duties without pay pursuant to G.S. 115C-325(f). The Board's grounds for suspension were immorality, insubordination, neglect of duty and habitual or excessive use of alcohol, G.S. 115C-325(e)(1)(b), (c), (d) and (f).

Upon being advised of the Board's action and of the Superintendent's intention to recommend his dismissal, plaintiff requested a hearing before a panel of the Professional Review Committee, pursuant to G.S. 115C-325(h)(3). A hearing was conducted on 3 November 1981. The Professional Review Committee panel unanimously found that the charges presented were "not true and substantiated."

Notwithstanding the Professional Review Committee panel's report the Superintendent, pursuant to G.S. 115C-325(i)(5), submitted a written recommendation for dismissal to the Board. This recommendation was accompanied by the panel's report. After receiving notification of the Superintendent's recommendation, plaintiff requested a hearing before the Board pursuant to G.S. 115C-325 (i)(6). The Board conducted a hearing on 3 December

1981. Following the hearing, the Board unanimously voted to dismiss plaintiff and directed that an order be drawn dismissing plaintiff as a teacher at H. J. MacDonald School. The grounds stated were that plaintiff had "made habitual and/or excessive use of alcohol" in violation of G.S. 115C-325(e)(1)(f); and that he had "failed to fulfill the duties and responsibilities imposed upon teachers by the General Statutes of this State" in violation of G.S. 115C-325(e)(1)(i).

Plaintiff appealed the Board's order to the Craven County Superior Court pursuant to G.S. 150A-43 *et seq.* Plaintiff also filed a Petition for Judicial Review of the decision and a complaint seeking reinstatement, back pay, costs, and attorney fees. The matter was heard by Judge Reid who entered an order affirming the Board's action on 13 August 1982. Plaintiff appealed.

*Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, by Yvonne Mims Evans and James C. Fuller, Jr., for plaintiff appellant.*

*Henderson and Baxter, by David S. Henderson, for defendant appellee.*

PHILLIPS, Judge.

The appropriate standard of judicial review for reviewing administrative decisions of boards of education is set forth in G.S. 150A-51. *Overton v. Board of Education,* 304 N.C. 312, 283 S.E. 2d 495 (1981). G.S. 150A-51 in pertinent part provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:
>
> . . . .
>
> (5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted . . . .

This standard of review is commonly referred to as the "whole record" test. In explaining what is involved in "whole record" review Justice Copeland stated:

This standard of judicial review is known as the "whole record" test and must be distinguished from both *de novo* review and the "any competent evidence" standard of review. The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.* On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences can be drawn. (Citations omitted.)

*Thompson v. Board of Education,* 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). "The 'whole record' test is not a tool of judicial intrusion; instead it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *In re Rogers,* 297 N.C. 48, 65, 253 S.E. 2d 912, 922 (1979); *Overton v. Board of Education,* 304 N.C. 312, 322, 283 S.E. 2d 495, 501 (1981).

The Board made the following pertinent conclusions of law:

1. That the teacher, Terry M. Faulkner, has made habitual and/or excessive use of alcohol (G.S. 115C-325(e)(1)(f)) in that on an occasion or occasions during the 1980-1981 school year, Faulkner has consumed some form of alcoholic beverages at school, or, at least, has had the odor of alcohol on his breath at school during instructional hours, and has, during the school day, on occasions during the 1981-1982 school year, and after reprimand and warning against the same, consumed alcoholic beverages, or at least, has had the odor of alcohol on his breath.

2. The said Terry M. Faulkner, teacher, has failed to fulfill the duties and responsibilities imposed upon teachers by the General Statutes of this State (G.S. 115C-325(e)(1)(i)) in that during the 1980-1981 school year he has absented himself from his classroom and classroom duties for inordinate

lengths of time; and has, after warning and reprimand against the same, during the 1981-1982 school year, been absent for inordinate lengths of time from his classroom and classroom duties.

These conclusions were based upon the following pertinent findings of fact:

4. That at some time during the 1980-1981 school year, while employed as a career teacher at the H. J. MacDonald Middle School and during regular instructional hours, the Principal of said school, Mr. Albert U. Hardison, did detect the odor of alcohol on the breath of said teacher, Terry M. Faulkner; and said Principal did remonstrate with and did informally reprimand said teacher for said conduct and did informally warn him against any further conduct of this kind, specifically, having the odor of alcohol on his breath at school, although no formal complaint was filed in his personnel file.

5. That following the reprimand by the Principal hereinabove set out in Paragraph 4, the Principal directed one Marie Satz, a counselor employed at the H. J. MacDonald Middle School and a friend of Faulkner, to talk with Faulkner regarding this problem; that she did talk with Faulkner at the request of the Principal.

6. That on several occasions during the early part of the 1981-1982 school year, the odor of alcohol was detected on the breath of Mr. Faulkner by another teacher, a Mrs. Margie Rice.

7. That on or about Thursday, September 3, 1981, a Mrs. Frances Motley, a parent, who had gone to Faulkner's classroom to obtain assignments for her child who was a student of Faulkner, detected the odor of alcohol on Faulkner's breath at approximately 2:30 o'clock P.M. on Thursday, September 3, 1981; and reported the same to the Superintendent.

8. That other complaints were received verbally and in writing by the said Principal and the Superintendent regarding the odor of alcohol on Faulkner's breath during the early part of the 1980-1981 school year.

. . . .

11. That during the 1980-1981 school year, the said Principal summoned Faulkner to his office and reprimanded him with regard to his extended absences from his classroom which he had a duty to instruct and supervise; whereupon the said Faulkner admitted the fact of being absent for inordinate periods of time from his classroom and promised to correct this inadequacy.

12. That the said Principal assumed that this problem regarding absences for inordinate lengths of time from the classroom had been corrected; however, during the early part of the 1981-1982 school year, because of complaints received by the Principal regarding extended absences from his classroom Faulkner was again reprimanded and warned by the Principal for the same, to which the said Faulkner admitted his absence from his classroom for inordinate lengths of time without just cause or excuse.

Plaintiff contends that these findings of fact and conclusions of law are erroneous in that they are not supported by substantial evidence. The evidence relied upon by the Board to support findings of fact numbers four through eight and conclusion number one tends to show: That near the beginning of the 1980-1981 school year Mr. Albert U. Hardison, H. J. MacDonald School principal, detected what he "believed to be the smell of alcohol" on plaintiff's breath; that when confronted with the charge plaintiff denied that he had been drinking; that the principal asked Mrs. Satz, a counselor at the school, if she would "talk with" the plaintiff about this; that during the first week of the 1981-1982 school year the principal received a complaint from Mr. Robert W. Brinson, Sr. that his son had smelled alcohol on the plaintiff's breath; and that he received a complaint from Mrs. Frances M. Motley that she had smelled alcohol on plaintiff's breath when she came to school to pick up her child's assignments. Marie Satz testified that she talked with plaintiff about drinking once during the 1980-1981 school year after the principal requested that she do so. She further testified that plaintiff denied having any odor of alcohol about his person at school. Robert W. Brinson, Sr. testified that his son told him on "several occasions" that the son had smelled alcohol on plaintiff's breath. These occasions all occurred during the first week of the 1981-1982 school year. Frances M. Motley testified that one day during the first week of the

1981-1982 school year when she went to school to pick up her son's assignments, she smelled what she thought to be alcohol on plaintiff's breath. She further testified that when she went to get the assignments plaintiff "was very, very nice" and that his speech was not slurred and that he walked straight. She further testified that her son told her he smelled something which "smelled like alcohol to him" on plaintiff. Margie Rice, a teacher at the school who worked in a different pod from plaintiff, testified that she smelled alcohol on plaintiff's breath during one of the teacher workdays at the beginning of the 1981-1982 school year and "maybe once or twice" after the students started to class, but that she didn't report it to anyone "because to me it wasn't that bad." The Superintendent testified that he had received complaints about the plaintiff having alcohol on his breath at school from parents. The only parents he identified were Mr. Brinson and Mrs. Motley.

Plaintiff offered evidence from Lois Evans, a teacher with over twenty years experience, who testified that she had bus duty with the plaintiff and she never saw him intoxicated and that she had never smelled alcohol on his breath. She further testified that she saw plaintiff a "great deal" because there were "many meetings at the beginning of school." She testified she usually sat at the same table with plaintiff during the meetings and had never smelled alcohol on his breath. Ernestine Rankin, a teacher with over thirty years experience, also testified that she had never smelled alcohol on plaintiff, nor had she heard any complaints about this from other members of the faculty. Annie Nixon, who taught in the same pod with plaintiff during the 1978-1979 and 1980-1981 school years, testified that she saw plaintiff "just about every morning" before his suspension and that she never smelled alcohol on his breath. Helen Adams, who taught in the same pod with plaintiff during the 1981-1982 school year, testified that she had never smelled alcohol on his breath. She further testified that she had eaten lunch with him on several occasions and had never smelled alcohol on his breath on those occasions either. Evelyn Peterson testified that she taught on the same floor with plaintiff and saw him twice per day during the 1980-1981 school year and every day before his suspension in the 1981-1982 school year, and that during these occasions she stood close enough to him to talk with him and that she did not

smell alcohol on his breath on any of these occasions. On cross-examination the principal testified that he had daily contact with the plaintiff during the 1981-1982 school year and that at no time during this period did he smell alcohol on plaintiff. He further testified that only on the one occasion, related by him on direct, did he smell alcohol on plaintiff's breath during the 1980-1981 school year. Plaintiff testified that he never drank at school but that he did have a drink or sometimes two before dinner and that he had a nightcap before he went to bed.

[1] In reviewing the whole record to determine whether there is substantial evidence to support the Board's findings of fact and conclusions we must also consider the Professional Review Committee panel's report that they found these allegations to be "not true and substantiated." *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977).

G.S. 115C-325(e)(1)(f) lists the "habitual or excessive use of alcohol" as a permissible ground for the dismissal of a career teacher. Webster's Third New International Dictionary 792 (1968) defines excessive as "characterized by or present in excess; . . . very large, great or numerous." Habitual is defined as "doing, practicing, or acting in some manner by force of habit: customarily doing a certain thing." *Id.* at 1017.

[2] An examination of the "whole record" reveals that standing alone the Board's evidence would show that over a two-year time span four different people smelled, "thought they smelled," or "believed" that they smelled alcohol on plaintiff's person. This evidence must then be considered in conjunction with the Professional Review Committee panel's unanimous finding that the charges presented were "not true and substantiated." The substantial evidence standard is not altered because the Board and panel disagree. "However, the evidence supporting a school board's decision may appear less substantial when an impartial panel, which has observed the witnesses and dealt with the case, has drawn different conclusions than when the panel has reached the same conclusion as the school board." *Thompson v. Board of Education*, at 414, 233 S.E. 2d at 543. Furthermore, the Board's evidence must be weighed together with evidence from several of plaintiff's co-workers, who had substantial contact with plaintiff, that they had never smelled alcohol about the plaintiff's person.

After considering the whole record, we are obliged to conclude that the Board's conclusion that plaintiff is an "habitual and/or excessive user of alcohol" is not adequately supported by evidence and must be set aside. If the charge was drinking during school duty hours the decision would be otherwise; but, of course, the Legislature has not seen fit to make that a ground for discharging career teachers.

[3] G.S. 115C-325(e)(1)(i) allows for dismissal of a career teacher for "[f]ailure to fulfill the duties and responsibilities imposed on teachers by the General Statutes of this State." G.S. 115C-307 enumerates the duties of teachers. These duties are: (a) To Maintain Order and Discipline, (b) To Provide for the General Well-Being of Students, (c) To Provide Some Medical Care to Students, (d) To Teach the Students, (e) To Enter into the Superintendent's Plans for Professional Growth, (f) To Discourage Nonattendance, (g) To Make Required Reports, and (h) To Take Care of School Buildings.

The evidence offered in support of the Board's findings of fact numbers 11 and 12 and its conclusion that plaintiff failed to perform his duties and responsibilities as imposed by the General Statutes tends to show that during the 1980-1981 school year the principal received complaints "from a couple of parents" that plaintiff was absent from his class for excessive time periods. The principal testified that he talked with the plaintiff about these complaints and that plaintiff acknowledged they were valid. After the conference the problems were corrected. The principal further testified that he received complaints about plaintiff's absence from the classroom again at the beginning of the 1981-1982 school year and that after he talked with plaintiff about his absences from the classroom "then he did correct it to my satisfaction." Robert Brinson, Sr. testified that his son told him that plaintiff would come to class, give an assignment, and leave for long periods of time. This evidence also must be considered in conjunction with the Professional Review Committee panel's findings that the charges were "not true and substantiated," and in the light of the evidence from Mrs. Satz, the counselor called as a witness by the Superintendent, that it was common practice for teachers to take five or ten minute breaks from the classroom, that this was done throughout the school and continued up until the time of the hearing. In our view the record fails to show in

any substantial way that plaintiff was derelict in any of the duties and responsibilities imposed on him by the General Assembly. We therefore hold that the Board's order dismissing plaintiff for the reasons stated in conclusion number two must also be set aside.

In light of the above holdings, plaintiff's argument that certain evidence was improperly admitted at the hearing need not be discussed. Suffice it to say the evidence presented, regardless of its caliber, was not sufficient to support the charges made.

The 13 August 1982 order of the trial court is reversed and the cause is remanded to the Superior Court of Craven County for entry of an order reinstating the plaintiff with back pay, reduced by his earnings during the period suspended, as determined by the court.

Reversed and remanded.

Judges WEBB and EAGLES concur.