LINDA P. GOODWIN v. THE GOLDSBORO CITY BOARD OF EDUCATION

No. 838SC273

(Filed 20 March 1984)

1. Schools § 13.2— review of teacher dismissal—whole record test
     The applicable standard of review of the dismissal of a career teacher is the "whole record" test. G.S. 150A-51(5).

2. Schools § 13.2— dismissal of career teacher—fair application of reduction in force policy—substantial evidence
     Substantial evidence supported a school board's determination that a career art teacher's dismissal because of declining enrollment and reductions in funding was the result of a fair and consistent application of the board's "reduction in force" policy although the evidence showed that evaluations for the three previous years were not available for the three art teachers who were being compared under the "reduction in force" policy.

APPEAL by respondent from *Stevens, Judge.* Judgment entered 17 January 1983 in Superior Court, WAYNE County. Heard in the Court of Appeals 9 February 1984.

This appeal involves a review of an administrative dismissal of a career teacher by a local school board because of a reduction in staff mandated by a revenue shortfall. Petitioner was a "career teacher," as defined by G.S. 115C-325(c), who taught art in the Goldsboro City Schools during the 1980-81 school year. In a letter dated 3 July 1981, petitioner was notified by the school superin-

tendent that he would recommend her dismissal to respondent school board due to declining enrollment and significant reductions in funding. Petitioner requested a hearing, pursuant to G.S. 115C-325(h)(3), before a panel of the Professional Review Committee.[1] Petitioner was represented by counsel at this hearing, which was held in September of 1981. The Professional Review Committee panel found that "the material presented was insufficient to substantiate the Administration's actions in dismissing Mrs. Goodwin."

After receiving the Professional Review Committee panel's report, the superintendent nevertheless recommended petitioner's dismissal. On 23 September 1981, respondent school board conducted a hearing on this recommendation. Petitioner was present and represented by counsel. Both petitioner and the superintendent presented evidence. Based on the evidence which it received, the board made findings of fact and concluded that the superintendent's decision in recommending petitioner's dismissal was "justified and proper" and that the board's written policy dealing with "reductions in force" had been applied fairly and consistently in this case. The board voted to terminate petitioner's status as a career teacher, to dismiss her from employment, but to place her name on a list of available teachers to have priority for all positions that became available for which she was qualified.

Upon petition to superior court for judicial review of the final administrative decision of the respondent school board pursuant to G.S. 150A-51, the trial judge found that the grounds for the superintendent's recommendation to dismiss petitioner were "unfounded and not substantiated." The trial judge ordered that the board's decision be reversed, that petitioner be reinstated to her status as a career teacher, and that she receive back pay. From this order, respondent school board appeals.

*Taylor, Warren, Kerr & Walker, by John Turner Walston and Lindsay C. Warren, Jr., for respondent-appellant.*

*George R. Kornegay, Jr. and Janice S. Head, for petitioner-appellee.*

---

1. For all cases arising after 15 July 1983, dismissals or demotions of career teachers due to reduction in funding or decreased enrollment are no longer subject to review by a panel of the Professional Review Committee. G.S. 115C-325(e)(2).

EAGLES, Judge.

Respondent school board assigns as error the trial judge's reversal of the school board's decision to dismiss petitioner. Respondent contends that there was substantial evidence in the whole record to support its decision to dismiss petitioner. We agree.

I.

[1]   The applicable standard of judicial review for an appeal of a school board decision is set forth in G.S. 150A-51. *Overton v. Board of Education*, 304 N.C. 312, 283 S.E. 2d 495 (1981); *Faulkner v. Board of Education*, 65 N.C. App. 483, 309 S.E. 2d 548 (1983). G.S. 150A-51(5) allows a court to reverse or modify a school board decision "if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are . . . [u]nsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted. . . ." This standard of review, known as the "whole record" test, presents to the trial judge a task which "must be distinguished from both *de novo* review and the 'any competent evidence' standard of review." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977).

> The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn. [Citations omitted.]

*Id.* "The 'whole record' test is not a tool of judicial intrusion; instead it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Overton v. Board of Education*, 304 N.C. at 322,

283 S.E. 2d at 501; *Faulkner v. Board of Education,* 65 N.C. App. at 486, 309 S.E. 2d at 550.

Thus, the task before the trial court was to consider all the evidence, both that which supports the decision of the board and that which detracts from it, to determine whether the board's finding, i.e., that petitioner's dismissal was the result of fair and consistent application of the board's "reduction in force" policy, was supported by substantial evidence.

## II.

[2] The evidence in the record supporting the board's finding is as follows:

Respondent school board has a written "reduction in force" policy which governs the "separation of staff from service" when loss of pupils, reduced funding, program changes, or district reorganization occurs. This policy directs that "staff and program priorities shall be set separately for grades K-5, 6-8, and 9-12," that classroom teachers shall have priority, and that noncertified teachers and teachers whose certificates have expired will be dismissed first. The policy then sets out a system to determine which other employees will be dismissed:

3. Employees will be divided into groups according to active certification for instructional staff and according to classification or work area for support personnel. Persons with multiple certification will be grouped in their current area of assignment.

　　*　　*　　*

6. Subsequent separations will be determined by the rank order of all employees in the group with such rank order based on a compilation of total points earned through performance ratings, years of service in the Goldsboro City Schools, service elsewhere, certificates held, and degrees earned, with probationary teachers subject to release first then career teachers.

7. Administrative reassignment to vacancies in existing federal, state, or local funded programs for which the individual is qualified will be offered to employees in the order of

descendency based upon the total points earned through the process outlined in #6 above, or to those employees with multiple certification whose transfers will reduce or eliminate the need for nonrenewing or dismissing other employees as described in #6 above.

8. Separation of employees with the lowest number of total earned points will take place in ascending order until the necessary number of employees is reached. When identical scores occur at the point in the ranking where the necessary number of separations is reached, the superintendent will recommend which employee(s) shall be released.

Respondent school board has a staff reduction data sheet, which provides a means of computing the total points earned for each employee. This allows: one point for each area of certification; one point for a Bachelor's degree; 1.5 points for a Master's degree; 2 points for a 6th year degree; 2.5 points for a Doctor's degree; .5 points for activity working toward higher certification; .5 *negative* points for each "N" received in formal evaluations for the previous three years; 1 *negative* point for each "U" received in formal evaluations for the previous three years; 1 point for each year in the Goldsboro City Schools; and .5 points for each year in other school systems. For the 1981-82 school year, the Goldsboro School System experienced a significant reduction in funding, which resulted in eight career teachers and eleven probationary teachers being dismissed or not having their contracts renewed. Of these 19 teachers, five were rehired before school began in August of 1981 because of resignations and reassignments of other teachers. Since petitioner received notice of the superintendent's recommendation to dismiss her, no teaching vacancy in art has occurred.

Due to the necessity of reducing the number of teaching positions, the superintendent made an administrative decision to eliminate teaching of art in grades K-6 for the 1981-82 school year. The correctness or educational soundness of this decision is not at issue. There were three teachers in the Goldsboro school system with art certification. They were grouped together in order to compare their respective "points," under the reduction in force policy. Until the 1980-81 school year there was no requirement that career teachers be evaluated annually, so for com-

puting the points on the staff reduction data sheet, the most recent three evaluations were used. Uniformly applying the board's reduction in force policy resulted in the following point scores:

TEACHER "A" (12 years in Goldsboro Schools) 19.5

TEACHER "B" (12 years in Goldsboro Schools) 19.0

PETITIONER (10 years in Goldsboro Schools) 12.5

### III.

There is evidence in the record which does not support the board's finding. Basically, it is: (1) that there are teachers in the Goldsboro school system who teach one or two classes out of their field of certification, and (2) that there were not teacher evaluations done in 1978-79 or 1979-80 for the three art teachers who were being compared under the board's "reduction in force" policy. The only evaluations available were for the school years 1972-73 and 1980-81. The professional review panel thought that was significant and reported:

> The panel finds that item six (6) of the Board Policy was inconsistently applied when ranking Art Teachers on the basis of performance ratings as shown in item three (3) of the "Staff Reduction Data Sheet." According to the *Reduction Data Sheet*, performance ratings are to be based on the current year and two (2) years immediately prior. The panel found that the only performance evaluations presented were for the school years 1972-73 and 1980-81. On the basis of such limited documentation, the panel feels that the material presented was insufficient to substantiate the Administration's actions in dismissing Mrs. Goodwin.

> Based upon the above facts, this panel unanimously disagrees with the recommendation of the Superintendent to dismiss Mrs. Goodwin.

### IV.

G.S. 115C-325(e)(1)(l) authorizes dismissal of a career teacher when there is a "justifiable decrease in the number of positions due to district reorganization, decreased enrollment, or decreased funding." The trial judge here was required to (1) review the

whole record to determine whether the board's finding, i.e., that petitioner's dismissal, pursuant to G.S. 115C-325(e)(1)(l), was the result of proper application of the "reduction in force" policy, was supported by substantial evidence and (2) set out his reasons for any modification or reversal of the school board. The scope of our review is the same.

Petitioner agrees that respondent school board had the authority to make the administrative decision which resulted in her dismissal. Petitioner, however, adopts the argument of the Professional Review Committee panel to the effect that the "reduction in force" policy was not properly applied because teacher evaluations for the three previous years were not available for inclusion in the comparative evaluation. In reviewing the record, we must consider the Professional Review Committee panel's report that they found that "the material presented was insufficient to substantiate the Administration's actions in dismissing Mrs. Goodwin." *Thompson v. Board of Education*, 292 N.C. at 414, 233 S.E. 2d at 543. Nevertheless, the "substantial evidence standard is not altered because the Board and panel disagree." *Faulkner v. Board of Education*, 65 N.C. App. at 490, 309 S.E. 2d at 552.

The fact that teacher evaluations had not been conducted and were not available for the three immediately previous years could have no prejudicial impact on the petitioner's fate before the school board. Petitioner would receive the smallest number of points on the staff reduction data sheets even if teacher evaluations were totally eliminated in computing points. We find that the respondent board's evidence concerning the procedure and data used to compare the three art teachers in the school system is substantial evidence of proper application of its "reduction in force" policy.

We have considered the Professional Review Committee panel's report and recommendation, but it appears that the position advocated by the panel and adopted by petitioner would require a fiscally impractical result. To hold that petitioner could not be dismissed because evaluations were not available for the previous three years for any of the teachers would mean that none of the three art teachers could be dismissed, even though the superintendent and the respondent Board had made a policy decision that art instruction would be eliminated in grades K-6.

After considering the whole record, we conclude that the trial judge erred in reversing the board's decision to dismiss petitioner, because there was substantial evidence in the record to support the board's decision. *Thompson v. Board of Education, supra.*

Reversed.

Judges HEDRICK and HILL concur.