IN THE MATTER OF: APPEAL OF COASTAL RESOURCES COMMISSION DECISION AGAINST NORTH TOPSAIL WATER AND SEWER, INC.

No. 894SC193

(Filed 5 December 1989)

**Waters and Watercourses § 7 (NCI3d) — unlawful filling of estuarine waters — notification to landowner — willful violation of Coastal Area Management Act**

The trial court erred in concluding that there was insufficient evidence to support the Coastal Resources Commission

IN RE APPEAL OF COASTAL RESOURCES COMMISSION DECISION

[96 N.C. App. 468 (1989)]

findings that petitioner's unlawful filling of estuarine waters with sediment laden water for nineteen days after notification that petitioner was in violation of the Coastal Area Management Act constituted a willful violation of the Act, since petitioner received six certified letters notifying him of his violation and telling him measures which must be taken to rectify the problem, but petitioner continued to take no action or ineffective action for nineteen days.

**Am Jur 2d, Pollution Control §§ 129, 211; Waters § 3.**

APPEAL by respondent from judgment entered 15 September 1988 by *Judge David E. Reid* in ONSLOW County Superior Court. Heard in the Court of Appeals 14 September 1989.

This is a civil action in which respondent, North Carolina Coastal Resources Commission, sought reversal of a judicial decision which partially vacated an assessment of civil penalties against petitioner, North Topsail Water and Sewer, Inc., in the amount of $19,000.00.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Robin W. Smith, for respondent-appellant, North Carolina Coastal Resources Commission.*

*Lanier & Fountain, by Gordon E. Robinson, Jr., for petitioner-appellee.*

JOHNSON, Judge.

In 1982, Marlow F. Bostic, president of North Topsail Water and Sewer, Inc. (petitioner), applied to the North Carolina Division of Environmental Management (DEM) for a permit to construct a spray irrigation wastewater treatment facility on a tract of land east of Highway 210 and adjacent to two tributaries of Mill Creek in Onslow County.

Mill Creek and its tributaries are seaward of the dividing line between inland and coastal waters and therefore constitute "estuarine waters" for purposes of the Coastal Area Management Act (CAMA). CAMA permits are required for any "development," as defined in G.S. sec. 113A-103, in estuarine waters or within 75 feet of estuarine waters. The permit application submitted by petitioner to DEM did not show any development activity in the northwest tributary or within 75 feet of the tributary—the area

subject to CAMA jurisdiction. DEM issued petitioner a permit for the treatment facility on 11 May 1982.

In 1983, petitioner began clearing, grading and filling on the three hundred acre site. In preparing the site, petitioner excavated four drainage ditches although no drainage ditches had been depicted on the development plan submitted by petitioner to DEM for review.

In late fall or early winter of 1983, petitioner also excavated the bed of the northwest tributary with a backhoe. No excavation in the tributary had been depicted on the development plan submitted by petitioner to the DEM and petitioner did not obtain a CAMA permit prior to undertaking the excavation.

On 19 December 1983, Division of Coastal Management (DCM) officials discovered the excavation in the northwest tributary. At that time, DCM officials found evidence of disturbance in the creek bed and uncontained spoil piles of five to six feet in height along the banks. DCM also found petitioner's four drainage ditches and observed that three of the four were carrying sediment-laden water from petitioner's project site directly into the northwest tributary.

DCM staff returned to the site on 25 January, 31 January, and 13 February 1984; DCM determined that the tributary and its shoreline was within CAMA permitting jurisdiction. On 13 February, DCM staked a location for construction of an earthen dam in the northwest tributary to slow its flow and reduce the amount of sediment introduced into the primary nursery areas.

By Notice of Violation dated 24 February 1984, DCM directed petitioner to install an earthen dam in the northwest tributary at the location staked by DCM officials no later than noon on 8 March 1984. The letter further advised petitioner that failure to install the dam by noon on 8 March 1984 would result in a continuing violation and that each day petitioner failed to comply would be considered a separate violation.

On the afternoon of 8 March 1984, DCM officials found that no dam had been installed and no steps had been taken preparatory to damming the area. Muddy water continued to flow into the northwest tributary from petitioner's drainage ditches.

On 9 March 1984, DCM found that the tributary still had not been dammed. Based upon the 9 March 1984 inspection, DCM sent a Notice of Continuing Violation to petitioner. The letter advised

him that each day the filling of estuarine waters continued because of failure to dam the tributary would be considered a separate violation subject to a $2,500.00 per day penalty.

A site inspection on 13 March 1984 revealed that a partial dam had been installed, but was not working properly. DCM sent a second Notice of Continuing Violation dated 13 March 1984 to petitioner. This letter described the necessary steps to bring the tributary into compliance.

Inspection by DCM officials on 27 March 1984 revealed that no additional work had been done on the dam and that muddy water had continued to flow into the lower section of the northwest tributary. On 28 March 1984, DCM found that corrective work had begun on the dam. When DCM officials returned to the site on 29 March 1984 the dam was effectively diverting the sediment-laden water of the northwest tributary into an adjacent wooded swamp and preventing its introduction into primary nursery areas. At that point, petitioner had come into compliance with DCM's restoration order of 24 February 1984.

DCM assessed three civil penalties against petitioner. The first penalty in the amount of $2,500.00 was assessed for the excavation and alteration of the northwest tributary without a CAMA permit. The second penalty of $2,500.00 resulted from petitioner's filling of approximately 25,500 square feet of primary nursery with sand and silt.

The third penalty assessed against petitioner, the issue presented on appeal, was a penalty for filling primary nursery areas each of the nineteen days that sediment-laden water continued to enter the primary nursery area after noon on 8 March 1984. The civil penalty of $19,000.00 reflected DCM's determination that petitioner acted willfully. This determination was upheld under the North Carolina Coastal Resources Commission's (Commission) Use Standards.

Respondent's sole contention on appeal is that the trial court erred in concluding that there was insufficient evidence, in view of the entire record, to support the Commission's findings that the unlawful filling of estuarine waters for nineteen days, after the specified deadline, constituted a willful violation of CAMA. We agree.

The scope of an appellate review of a trial court's order affirming or reversing a final agency's decision is governed by G.S. sec. 150B-52. This Court must determine whether the trial court committed any errors of law. These errors of law, if present, could be the result of an improper application of the standard of review as articulated in G.S. sec. 150B-51. *American Nat'l Ins. Co. v. Ingram*, 63 N.C. App. 38, 41, 303 S.E.2d 649, *cert. denied*, 309 N.C. 819, 310 S.E.2d 348 (1983).

If an "agency's findings, inferences, conclusions or decisions are unsupported by substantial evidence . . . in view of the entire record as submitted," the reviewing court may "reverse or modify the agency's decision." G.S. sec. 150B-51(5). The statute, as interpreted by the N.C. Supreme Court, maintains the whole record test as the standard of a judicial review for issues arising under the dictates of the Administrative Procedure Act. *In the Matter of the Appeal of K-Mart Corp.*, 319 N.C. 378, 380, 354 S.E.2d 468, 469 (1987).

> The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*Goodwin v. Goldsboro Board of Education*, 67 N.C. App. 243, 245, 312 S.E.2d 892, 893-94, *cert. denied*, 311 N.C. 304, 317 S.E.2d 680 (1984).

We must look at the trial court's decision in light of this standard of review. It is important to note, however, that "[t]he 'whole record' test is not a tool of judicial intrusion; instead it merely gives [this] court the capability [of] determin[ing] whether [the] administrative decision has a rational basis in the evidence." *Id.*

Under the applicable section of CAMA, the Commission is authorized to "consider each day the action or inaction continues

IN RE APPEAL OF COASTAL RESOURCES COMMISSION DECISION

[96 N.C. App. 468 (1989)]

after notice is given of the violation as a separate violation [and] a separate penalty may be assessed for each such separate violation," where the action or inaction is willful. G.S. sec. 113A-126(d)(2).

In the case *sub judice*, petitioner was instructed, by Notice of Violation, to construct an earthen dam by noon on 8 March 1984. This notice was dated 24 February 1984. An inspection of the site on 8 March 1984 by DCM officials revealed that no dam had been constructed and no steps had been taken to damming the area. On the following afternoon, DCM officials once again inspected the area and found that the tributary still had not been dammed. A Notice of Continuing Violation, advising the petitioner that each day filling the estuarine water continued because of a failure to dam the tributary would be considered a separate violation subject to a penalty of up to $2,500.00 per day.

On 13 March 1984, another site inspection was conducted and yielded the construction of a partial dam, but it was not functioning properly. A second Notice of Continuing Violation was sent to petitioner and provided a description of the necessary steps to bring the area into compliance.

An inspection by DCM officials on 27 March 1984 revealed no additional work had been done on the dam and that muddy water had continued to flow into the lower section of the northwest tributary.

On 28 March 1984, DCM officials found that corrective work had begun on the dam. When DCM officials returned to the site on 29 March 1984, the dam was finally in compliance with DCM's restoration order of 24 February 1984.

DCM assessed petitioner with a civil penalty of $1,000.00 per day for each of the nineteen days that sediment-laden water continued to enter the primary nursery area after noon on 8 March 1984. The $1,000.00 per day fine manifested a doubling of the base penalty of $500.00 per day as mandated by the Commission's civil penalty schedule. The doubling of the base penalty resulted from the DCM's determination that petitioner acted willfully.

We believe the record contains ample evidence to support the Commission's findings and conclusions that the petitioner's continued inactions were willful. We note that the petitioner received a certified letter notifying him that the tributary was in violation as early as 6 February 1984.

Although petitioner acknowledges the physical receipt of six such letters, he also avows to not having read any of them.

This Court finds substantial evidence in the record to support the Commission's determination that petitioner's pattern of intentional resistance amounted to willful noncompliance. The trial court's application of the "whole record test" was improperly applied.

Accordingly, for the aforementioned reasons, the judgment of the trial court vacating the assessment of civil penalties is reversed and the matter is remanded for reinstatement of the Coastal Resources Commission's order in full.

Reversed and remanded.

Judges EAGLES and GREENE concur.