TERRY FAULKNER v. NEW BERN-CRAVEN COUNTY BOARD OF EDUCATION

No. 24PA84

(Filed 5 June 1984)

1. Schools § 13.2— teacher dismissal—judicial review—whole record test

The standard of judicial review of a board of education's dismissal of a career teacher is the "whole record" test set forth in G.S. 150A-51(5).

2. Schools § 13.2— dismissal of career teacher for excessive use of alcohol

Defendant board of education did not err in concluding that a course of conduct involving the use of alcohol by a career teacher on school property during school hours, the same being obvious to the teacher's students, to parents and to other school personnel and repeated after continued warnings, was "excessive" within the meaning of G.S. 115C-325(e)(1)f, and the board acted lawfully in dismissing the teacher for the excessive use of alcohol.

Justice EXUM dissenting.

Justice FRYE joins in the dissenting opinion.

ON discretionary review, pursuant to N.C.G.S. 7A-31, of the decision of the Court of Appeals, 65 N.C. App. 483, 309 S.E. 2d 548 (1983), setting aside the judgment entered in favor of the defendant by Reid, J., said judgment being filed out of term on 16 August 1982 in Superior Court, CRAVEN County. Heard in the Supreme Court 8 May 1984.

On 17 September 1981, Terry Faulkner was suspended from a tenured teaching position by the New Bern-Craven County Board of Education. The grounds for the dismissal listed by Ben D. Quinn, Board of Education Superintendent, were: (1) habitual or excessive use of alcohol, N.C.G.S. 115C-325(e)(1)(f); (2) failure to fulfill the duties and responsibilities imposed upon teachers by

the General Statutes of this state, N.C.G.S. 115C-325(e)(1)(i); (3) neglect of duty, N.C.G.S. 115C-325(e)(1)(d); (4) immorality, N.C.G.S. 115C-325(e)(1)(b); and (5) insubordination, N.C.G.S. 115C-325(e)(1)(c).

Pursuant to N.C.G.S. 115C-325(h)(3), the plaintiff promptly requested a hearing before a panel of the Professional Review Committee. A hearing was held on 3 November 1981. The five-member panel communicated its findings to Dr. Quinn and to the plaintiff in a letter which set out the purpose of the hearing, the names of those in attendance, and the charges against Terry Faulkner, and concluded with the following:

The factual circumstances alleged to have been grounds for dismissal were based on two sets of evidence. The first was that the teacher "consumed some form of alcoholic beverages upon school grounds at H. J. McDonald [sic] School and during class room teaching hours". The second was that Mr. Faulkner "has repeatedly and frequently and without just cause or excuse absented himself from his class of students during class teaching periods for extended lengths of time."

Based on the evidence presented, the Panel unanimously finds that the charges as presented are not true and substantiated.

On 9 November 1981, Superintendent Quinn proceeded nevertheless to recommend Faulkner's dismissal on the original grounds listed above, whereupon the plaintiff sought a hearing before the defendant board of education.

On 3 December 1981, nine out of twelve members of the Board went into executive session to hear evidence presented by Superintendent Quinn and Terry Faulkner. Based upon hearing testimony by witnesses for each side and having considered the aforementioned report of the Professional Review Committee panel, the Board made the following findings of fact:

1. The said Terry M. Faulkner was employed as a teacher by the New Bern School System in 1969; and has taught Language Arts and other subjects in the Seventh (7th) Grade since 1969; and since 1971 has been employed continuously as a teacher in the H.J. MacDonald Middle School

until his suspension by the Board in September, 1981 pursuant to G.S. 115C-325(f).

2. That for the three (3) years next preceeding [sic] 1981 he had received satisfactory or better evaluation reports.

3. That for the 1981-1982 school year, he was employed as a career teacher in Language Arts for the Seventh (7th) Grade at H.J. MacDonald Middle School.

4. That at some time during the 1980-1981 school year, while employed as a career teacher at the H.J. MacDonald Middle School and during regular instructional hours, the Principal of said school, Mr. Albert U. Hardison, did detect the odor of alcohol on the breath of said teacher, Terry M. Faulkner; and said Principal did remonstrate with and did informally reprimand said teacher for said conduct and did informally warn him against any further conduct of this kind, specifically, having the odor of alcohol on his breath at school, although no formal complaint was filed in his personnel file.

5. That following the reprimand by the Principal hereinabove set out in Paragraph 4, the Principal directed one Marie Satz, a counselor employed at the H.J. MacDonald Middle School and a friend of Faulkner, to talk with Faulkner regarding this problem; that she did talk with Faulkner at the request of the Principal.

6. That on several occasions during the early part of the 1981-1982 school year, the odor of alcohol was detected on the breath of Mr. Faulkner by another teacher, a Mrs. Margie Rice.

7. That on or about Thursday, September 3, 1981, a Mrs. Frances Motley, a parent, who had gone to Faulkner's classroom to obtain assignments for her child who was a student of Faulkner, detected the odor of alcohol on Faulkner's breath at approximately 2:30 o'clock P.M. on Thursday, September 3, 1981; and reported the same to the Superintendent.

8. That other complaints were received verbally and in writing by the said Principal and the Superintendent regard-

ing the odor of alcohol on Faulkner's breath during the early part of the 1981-1982 school year.

9. That on or about Friday, September 4, 1981, the said Principal issued a directive to Faulkner advising of the complaints received by the Principal of drinking and/or having the odor of alcohol on Faulkner's breath and directing him to consult with the said Principal that afternoon, ie: September 4, 1981.

10. That the said Faulkner ignored or otherwise refused or failed to respond to the said directive of the Principal; and did not respond to the Principal until he was again summoned by the Principal for his response to these complaints on Tuesday, September 8, 1981.

11. That during the 1980-1981 school year, the said Principal summoned Faulkner to his office and reprimanded him with regard to his extended absences from his classroom which he had a duty to instruct and supervise; whereupon the said Faulkner admitted the fact of being absent for inordinate periods of time from his classroom and promised to correct this inadequacy.

12. That the said Principal assumed that this problem regarding absences for inordinate lengths of time from the classroom had been corrected; however, during the early part of the 1981-1982 school year, because of complaints received by the Principal regarding extended absences from his classroom Faulkner was again reprimanded and warned by the Principal for the same, to which the said Faulkner admitted his absence from his classroom for inordinate lengths of time without just cause or excuse.

Based upon the foregoing findings, the Board concluded that the grounds upon which the superintendent had recommended dismissal were true and substantial, and ordered plaintiff to be dismissed.

On 31 December 1981, plaintiff filed notice of appeal to superior court pursuant to N.C.G.S. 115C-325(n) and also filed a petition for judicial review pursuant to N.C.G.S. 150A-43. The case was heard without a jury by consent of the parties on 19

March 1982. Judge Reid affirmed the Board's order of dismissal. His judgment, in significant portion, follows:

> The Court has now reviewed the entire record as submitted, including the transcript of hearing before the New Bern-Craven County Board of Education. The Court has further taken into account the finding of the Professional Review Committee that concluded unanimously that the charges against the plaintiff-appellant were neither true nor substantiated.

> The Court upon review of the entire record finds that the findings of fact set forth in the Board Order denominated: 1, 2 and 3 are not in dispute and are, in fact, for the most part, favorable to the plaintiff-appellant.

> The Court further finds that findings of fact Numbers 4, 5, 6, 7 and 8 are supported by the entire record.

> The Court further finds that finding of fact Number 9 is partially supported by the entire record except that the Court concludes that a fair interpretation of the communication from Mr. Hardison, the school principal, to Mr. Faulkner on September 4, 1981, was not a directive requiring a consultation with Mr. Hardison that afternoon; but rather a notice that complaints had been lodged concerning drinking and extended absence from class followed by an invitation to discuss the situation further if Mr. Faulkner so desired. (Tr. Page 22)

> The Court finds that the entire record does not support the Board's finding of fact Number 10 except that it is clear the principal, Mr. Hardison, and Mr. Faulkner met on September 8, 1981, concerning the complaints that had been received and that the meeting was at the direction of Mr. Hardison. (Tr. Page 29)

> That as to finding of fact Number 11, the Court finds ample support for the conclusion that Mr. Faulkner admitted being absent from class for inordinate periods of time during the 1980-1981 school year but nowhere does the record reflect that the principal, Mr. Hardison, reprimanded him for such conduct. A fair interpretation of the whole record on this point would indicate that the matter was treated as a

Principal-Teacher conference for the purpose of correcting teacher's short comings. (Tr. Page 30)

In view of the whole record test, it appears to the Court that finding of fact Number 12 is supported by the evidence. (Tr. Pages 29, 30, 31, 206, 210)

This Court has considered the entire record in light of the decisions of *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 SE 2d 538 (1977) and *Overton v. Board of Education*, 304 N.C. 312, 283 SE 2d 495 (1981). From that vantage, it appears to this Court that while the evidence in support of the Board's decision must be substantial, it is not the function of a reviewing court to substitute its judgment for that of the Board's.

The decision of the Board reflected in its Order appears harsh to this Court, perhaps unduly so in view of Mr. Faulkner's record as an above-average teacher for eleven years. However, where the Board's decision has a rational basis in the evidence, the reviewing court may not intrude.

The Board's conclusion that the teacher has made "habitual and/or excessive use of alcohol" during the 1980-81 and 1981-82 school years is supported by the testimony of three competent adults who at separate times detected the odor of alcohol on his breath. Repeated occasions where the odor of alcohol is detected on one's breath by responsible witness at separate times and at separate places would seem to form a rational basis for the conclusion reached by the Board that the teacher has made habitual or excessive use of alcohol.

The second conclusion relating to the teacher's failure to fulfill the duties and responsibilities imposed upon teachers seems to cause less difficulty. By the teacher's own admission, he had absented himself from class at various times during both the 1980-81 and 1981-82 school years and for excessive periods of time.

. . . .

The Board did make certain findings of fact that were not supported by the evidence. However, those findings main-

ly concerned the nature and interpretation of communications and conferences between Mr. Hardison, the principal, and Mr. Faulkner. None of these findings were essential to sustain the conclusion reached by the Board.

The Court of Appeals reversed the judgment of the superior court and ordered reinstatement of plaintiff with back pay. We granted discretionary review on 6 March 1984.

*Chambers, Ferguson, Watt, Wallace & Adkins, P.A., by Yvonne Mims Evans, and Thorp, Fuller and Slifkin, P.A., by James C. Fuller, Jr., for plaintiff.*

*Henderson & Baxter, P.A., by David S. Henderson and Benjamin G. Alford, for defendant.*

MARTIN, Justice.

The New Bern-Craven County Board of Education based its final decision to dismiss Terry M. Faulkner on two of the five statutory grounds specified in the recommendation of Superintendent Quinn. We have granted discretionary review in this case to consider the first of these grounds as articulated in the Board's report:

> 1. That the teacher, Terry M. Faulkner, has made habitual and/or excessive use of alcohol (G.S. 115C-325(e)(1)(f)) in that on an occasion or occasions during the 1980-1981 school year, Faulkner has consumed some form of alcoholic beverages at school, or, at least, has had the odor of alcohol on his breath at school during instructional hours, and has, during the school day, on occasions during the 1981-1982 school year, and after reprimand and warning against the same, consumed alcoholic beverages, or at least, has had the odor of alcohol on his breath.

In particular, we examine the following significant portion of the Court of Appeals opinion in this case:

> After considering the whole record, we are obliged to conclude that the Board's conclusion that plaintiff is an "habitual and/or excessive user of alcohol" is not adequately supported by evidence and must be set aside. If the charge was drinking during school duty hours the decision would be other-

wise; but, of course, the Legislature has not seen fit to make that a ground for discharging career teachers.

65 N.C. App. at 491, 309 S.E. 2d at 552.

We cannot concur in this assessment of the intent of our legislature regarding acceptable standards of conduct for career teachers in North Carolina and therefore reverse the decision of the Court of Appeals.

We look first to the evidence in this case as it relates to the conduct of plaintiff, the Board's findings based thereon, and the proper standard for review.

This Court has held:

We find no standards for judicial review for an appeal of a school board decision to the courts set forth in Chapter 115 of our General Statutes. Moreover, we note that G.S. 150A-2(1) expressly excepts county and city boards of education from the coverage of the Administrative Procedure Act (APA), Chapter 150A, N.C. General Statutes. However, this Court held in *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977), that the standards for judicial review set forth in G.S. 150A-51 are applicable to appeals from school boards to the courts. Since no other statute provides guidance for judicial review of school board decisions and in the interest of uniformity in reviewing administrative board decisions, we reiterate that holding and apply the standards of review set forth in G.S. 150A-51 (1978).

*Overton v. Board of Education*, 304 N.C. 312, 316-17, 283 S.E. 2d 495, 498 (1981).

N.C.G.S. 150A-51, the governing statute, provides in part:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:

. . . .

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; . . .

[1] Judge Reid was entirely correct in applying the "whole record" test, as set forth above in N.C.G.S. 150A-51(5), to the Board's findings. As explained by Justice Copeland:

The "whole record" test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo* . . . . On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence.

*Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). *See also Universal Camera Corp. v. Labor Bd.*, 340 U.S. 474, 95 L.Ed. 456 (1951).

Under the "whole record" test, therefore, the reviewing judge must consider the complete testimony of all the witnesses. *In re Appeal from Environmental Management Comm.*, 53 N.C. App. 135, 280 S.E. 2d 520 (1981). We note, furthermore, the following statutory provision regarding board hearings such as this: "(4) Rules of evidence shall not apply to a hearing conducted pursuant to this act and boards and panels of the Professional Review Committee may give probative effect to evidence that is of a kind commonly relied on by reasonably prudent persons in the conduct of serious affairs." N.C. Gen. Stat. § 115C-325(j)(4) (1983).

N.C.G.S. 115C-325(*l*) governs board hearing procedures in cases where, as here, the panel of the Professional Review Committee does not find that the grounds for the superintendent's recommendations are true and substantiated. It mandates that the report of the panel shall be deemed to be competent evidence. It further requires that the decision of the board be based on a preponderance of the evidence. *See* N.C. Gen. Stat. §§ 115C-325(*l*) (2), (4) (1983).

Having established the parameters for a proper review by the superior court and the Court of Appeals, we now consider all

the evidence—both that which supports the decision of the Board and that which in fairness detracts from it. We are to determine whether the Board's findings of fact four through ten and resulting conclusion concerning plaintiff's use of alcohol are supported by substantial evidence in view of the entire record as submitted. *See Overton v. Board of Education, supra,* 304 N.C. 312, 283 S.E. 2d 495.

In support of the above findings and conclusion of the Board, there is the following:

Firsthand testimony:

(1) Albert U. Hardison, principal, supervises a staff of almost eighty, with forty-one teaching positions. He testified that one morning near the beginning of the 1980-81 school year, as he was talking to plaintiff in the corridor outside his office, he detected what he "believed to be the smell of alcohol" on Faulkner's breath. He continued: "I talked with Mister Faulkner about it, expressed to him that I believed that I had smelled alcohol on his breath, and that I knew that he must know and understand, and recognize, the seriousness of this, and the consequences of it." Regarding this encounter with plaintiff, Hardison later testified: "[I]f anyone had made the statement to me that I made to Mister Faulkner, that I would have considered it a warning. . . . I intended my message to him to be that, 'I smelled alcohol on your breath'; that 'This is going to cause a great deal of problems if this sort of thing persists.'" Hardison said that just after this incident, he asked Mrs. Marie Satz, a counsellor at the school, to talk with plaintiff about this conduct.

(2) Frances M. Motley, mother of a student of Mr. Faulkner's, testified that on the Thursday before Labor Day 1981, at 2:30 p.m., the end of the school day, she went to see plaintiff to pick up her son's assignments. "Right from the beginning" of their three or four minute meeting, she thought she recognized the odor of alcohol on Mr. Faulkner's breath. She was concerned and discussed it at home that night with her husband. They did not mention the incident to their son Phillip.

(3) Margie Crawley Rice, a faculty member, testified that at the beginning of the 1981-82 school year at a teachers' workday, prior to the students coming to school, she came in contact with

plaintiff and smelled liquor on his breath. Then, "once or twice, at least—maybe twice; not any more," she recognized the odor of alcohol on his breath in the morning, prior to the tardy bell, after the students arrived to begin classes.

Hearsay testimony:

(1) Robert W. Brinson, parent of a child in plaintiff's class, testified: "It was reported to me by my son on several occasions that he smelled alcohol on Mister Faulkner's breath, and that Mister Faulkner had left the classroom unattended for long lengths of time during the first week of school." Mr. Brinson further stated that after the third such report from his son—in which his son related that "he did not smell alcohol on his breath in his morning class that he had with Mister Faulkner, but that the class had gone into Mister Faulkner's class that afternoon to see a film, and he smelled it on him then"—he wrote a letter to the school principal. When questioned whether his twelve-year-old son ever had any experience that would enable him to recognize the odor of alcohol, Mr. Brinson stated: "Yes, sir. One of his grandfathers is an alcoholic."

(2) Mr. Hardison, the principal, corroborated the testimony above of school parents Brinson and Motley. The latter had complained to a school counsellor who in turn spoke with Mr. Hardison. When asked how he followed up on these complaints, Mr. Hardison testified that he sent Faulkner the following memo:

> It's dated 9/4/81; and it says, "Terry, I have received complaints from parents this week in two specific areas; (a), a strong alcohol breath, and; (b), frequent, extended absences from the classroom. I have an obligation to pass these complaints on to you. I'll be available after school if you'd like to discuss the situation further."

After Terry Faulkner was placed on suspension, Mr. Hardison asked the remaining teachers in the pod "to give me the names of six children in the pod they considered to be the most mature, the dependable, kids in the pod." He proceeded to question each child about Mr. Faulkner: "I had to make an effort to at least let a part of the truth be cast . . . by what some of the children had to say about the situation." Mr. Hardison related the results of these interviews as follows:

Okay. Student Number One said, "A nice man; a good teacher"; there was talk of drinking a lot, among students, at which point, I asked, "What do you mean by 'a lot'?" and the answer was, "Two or three times a week"; the students said, "Out of room quite a bit during first and sixth periods" and that the student had smelled alcohol a couple times, on the breath. Student Number Two said, "The breath smelled like he had been drinking; a fairly good teacher; out of the room quite a bit during homeroom and social studies" but that there was talk, almost every day at the desk, about alcohol on the breath. Student Number Three said that he seemed to leave the class more than other teachers; that often, he would come out and pass out papers and leave the room; that kids did talk a lot about his drinking; that he was, ". . . as far as I'm concerned, an 'all right' teacher; that I have smelled it on his breath." Student Number Four said he "was nice; I liked him; he was out of the room more than my other teachers; I have smelled alcohol and heard other kids say they smelled it; most kids like him". Student Number Five said, "I was not in his room"—this would have been one that was in the pod, but by scheduling, was not in his room for anything—that he had heard friends say, "Did not stay in the room as much as he ought to," and that they had smelled alcohol on the breath when they walked by him. Student Number Six said, "Not very much homework; majority cut him down, poked fun at him at his back; he was a good teacher; I liked him a lot sometimes" and then, "in and out"; "I never smelled alcohol on his breath. The majority of those that didn't want to work cut him down at his back." She had heard—correction; this student had heard kids say that they had smelled alcohol, but had not—this student—had not smelled it.

The students he questioned were "boys, girls, black and white."

Mr. Hardison also testified that he had received complaints from parents at the beginning of the previous school year regarding plaintiff's absence from class; that he had discussed the matter with plaintiff who "acknowledged they were valid complaints" and assured Hardison the situation would be corrected.

(3) Parent Frances Motley testified that the next night after her own encounter with plaintiff, her son—to whom no mention had been made of the earlier incident—came home from school "and he just told us that that day Mister Faulkner had stayed out of the room for a while, and when he came back that he smelled, like alcohol, to him; and at that point, we put the two together and—you know—it concerned us even more." It was then that Mrs. Motley decided to speak with Superintendent Quinn and she also put her complaint in writing; she then contacted the school guidance counsellor.

(4) Mrs. Marie Satz, teacher and counsellor at the school, testified that she was a personal friend of plaintiff's; she had been asked by Mr. Hardison to speak with Faulkner about the reports "that some people had smelled alcohol on his breath"; and, finally, that "there had been a student who had come down to see me, and had a concern about smelling liquor on Mister Faulkner's breath."

(5) Superintendent Ben Quinn testified that he had spoken about the matter with parents Brinson and Motley; that he "received one or two other telephone calls from parents; I had maybe one or two calls from board members who were referring the calls to me that they had received from parents"; and that he "received two other letters regarding Mister Faulkner." Superintendent Quinn met with Principal Hardison at the school on the Tuesday following Labor Day. About this meeting, he stated: "I inquired from Mister Hardison if he thought these complaints were legitimate, and he assured me that he thought they were, based on the fact that he had had a similar situation a year before . . . ."

Plaintiff's testimony:

Plaintiff testified that he had no reason to believe that any of the above witnesses—students or parents—would not be telling the truth. He stated that he remembered one occasion when Mrs. Satz spoke to him about a complaint concerning his having the odor of alcohol on his breath. He acknowledged receipt of the above-mentioned memo from Mr. Hardison on the Friday before Labor Day, the same afternoon Phillip Motley had reported to his parents that he smelled the odor of alcohol on Faulkner's breath.

He interpreted the memo to mean that "more than one parent" had complained, and sought advice over the weekend rather than go immediately to see Hardison because "we had spoken about this before." He did not see Mr. Hardison until the latter came to his classroom the Tuesday after Labor Day after conferring with Superintendent Quinn. Faulkner revealed that he had already spoken with Mr. Hardison earlier in the week, prior to receiving the memo, concerning complaints about his absences from class and the possible odor of alcohol on his breath. Concerning his absences from class, plaintiff testified "[p]erhaps it was not all right, but I didn't know anyone was suffering from it at the time. . . . I don't think the children were suffering." Mr. Faulkner acknowledged he had three to four drinks every night.

The record as a whole reveals the following evidence which may fairly detract from the weight of the Board's evidence:

(1) The report of the Professional Review Committee panel concluded that the charges as presented were not true and substantiated.

(2) No witness testified that Terry Faulkner had been seen under the influence of alcohol or consuming alcohol on school premises during school hours.

(3) Faulkner was evaluated by Mr. Hardison as doing "a very satisfactory job" as a teacher, "and even better than that in some areas," particularly language arts where he was seen to be "talented and well-prepared and well-trained and gifted."

(4) Five teachers testified in behalf of Mr. Faulkner. Two had taught in the same pod with plaintiff in 1981-82 before his suspension, and four had known plaintiff for many years. None of these witnesses had been aware of any discussion among the faculty of a problem concerning either plaintiff's use of alcohol on the premises or his absences from class. He had a reputation as a good teacher and good disciplinarian. Two witnesses spoke of seeing Mr. Faulkner daily—one just about every morning before class and the second, once or twice a day at the duplicating machine. None of these witnesses had personally noticed either an odor of alcohol or prolonged absences from his class. Three of these witnesses expressed their strong surprise upon learning of Faulkner's suspension.

(5) There was testimony from several teachers regarding the "common practice" of team teachers leaving the teaching area for brief periods of time to have a cigarette or to run a school errand.

(6) When asked if he had any explanation for the same accusation being made by "all of these different people at different times," plaintiff stated: "I don't know what they smelled; it was not alcohol that had been consumed at school, I do know that."

[2] Upon review of the entire record as submitted, we are satisfied, and we so hold, that the findings of fact and conclusion of the defendant board of education are supported by substantial evidence and based upon a preponderance of the evidence. N.C. Gen. Stat. § 115C-325(*l*)(4) (1983).

> "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Fire Insurance Rating Bureau,* 292 N.C. 70, 80, 231 S.E. 2d 882, 888 (1977); *accord, Comr. of Insurance v. Automobile Rate Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975). "Substantial evidence is more than a scintilla or a permissible inference." *Comr. of Insurance v. Automobile Rate Office, supra* at 205, 214 S.E. 2d at 106; *Utilities Commission v. Trucking Company,* 223 N.C. 687, 690, 28 S.E. 2d 201, 203 (1943).

*Thompson v. Board of Education, supra,* 292 N.C. at 414-15, 233 S.E. 2d at 544.

As Justice Exum has noted: "The 'whole record' test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *In re Rogers,* 297 N.C. 48, 65, 253 S.E. 2d 912, 922 (1979). *See also* L. Jaffe, *Judicial Control of Administrative Action* (1965).

A reasonable mind might well conclude upon a review of the above evidence, as did the Board, that Terry M. Faulkner had engaged in the following behavior:

> [O]n occasion or occasions during the 1980-81 school year . . . has consumed some form of alcoholic beverages at school, or, at least, has had the odor of alcohol on his breath at school during instructional hours, and has, during the school day, on

occasions during the 1981-1982 school year, and after reprimand and warning against the same, consumed alcoholic beverages, or at least, has had the odor of alcohol on his breath.

We further hold that when ascribed to a career teacher in North Carolina, this conduct constitutes "habitual or excessive use of alcohol" within the meaning and intent of N.C.G.S. 115C-325(e)(1)(f), becoming thereby lawful grounds for dismissal.

We are aware of an apparent tension between N.C.G.S. 115C-325(j)(4) and -325(*l*)(1), (2). Subsection (j) provides that (j)(4) *shall* apply to any hearing pursuant to -325(*l*). (4) states that rules of evidence shall not apply to such hearings and the board may give probative effect to evidence that is of a kind commonly relied upon by reasonably prudent persons in the conduct of serious affairs. This would allow the use of certain hearsay evidence.

N.C.G.S. 115C-325(*l*)(1) refers to a basis of "competent evidence adduced at the hearing by witnesses who shall testify under oath . . . ." (*l*)(2) also refers to "relevant competent evidence."

In attempting to reconcile the apparent discrepancies in the statutes, a strong argument can be made that "competent evidence" as used in 115C-325(*l*)(1) and (2) includes evidence described in 115C-325(j)(4), because (j)(4) refers specifically to hearings under 115C-325(*l*).

However, we do not find it necessary to resolve this apparent dichotomy because we reach the same conclusion when the "hearsay" evidence is excluded from consideration. The testimony of the witnesses Hardison, Motley, and Rice alone support the Board's decision by the preponderance of the evidence upon a whole record review. Plaintiff never denied having the odor of alcohol on his breath and candidly conceded that he had no reason to believe that any of the witnesses were not telling the truth. The testimony of the five teachers who testified for Faulkner was basically negative; they had never detected any odor of alcohol about him or heard the subject discussed.

In construing N.C.G.S. 115C-325(e)(1)(f), "habitual or excessive use of alcohol" as a permissible ground for the decision to dismiss a career teacher, we must be guided by the following principle:

> The object of all interpretation is to determine the intent of the law-making body. Intent is the spirit which gives life to a legislative enactment. The heart of a statute is the intention of the law-making body. *Trust Co. v. Hood, Comr.*, 206 N.C., 268; *S. v. Earnhardt*, 170 N.C., 725. In the language of Chancellor Kent: "In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms, and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the remedy in view, and the intention is to be taken or presumed according to what is consonant with reason and good discretion." I Kent Com., 461.

*State v. Humphries*, 210 N.C. 406, 410, 186 S.E. 473, 476 (1936).

A settled rule of construction therefore requires that all statutes relating to the same subject matter shall be construed *in pari materia* and harmonized if this end can be attained by any fair and reasonable interpretation. *Castevens v. Stanly County*, 209 N.C. 75, 183 S.E. 3 (1935); *State v. Baldwin*, 205 N.C. 174, 170 S.E. 645 (1933). *See generally* 12 Strong's N.C. Index 3d *Statutes* § 5.4 (1978). It is equally well settled that every statute is to be considered in the light of the state constitution and with a view to its intent. *State v. Emery*, 224 N.C. 581, 31 S.E. 2d 858 (1944); *Belk Brothers Co. v. Maxwell, Comr. of Revenue*, 215 N.C. 10, 200 S.E. 915 (1939).

Concerning the duties of our elementary and secondary teachers, the legislature has ordained: "(b) To Provide for General Well-Being of Students.—It shall be the duty of all teachers . . . to encourage temperance, morality, industry, and neatness; to promote the health of all pupils . . . ." N.C. Gen. Stat. § 115C-307 (b) (1983). With regard to education in this state, Article IX, Section 1, of the North Carolina Constitution charges: "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged."

With the above, we have a statutory and constitutional context for a closer examination of the language at issue. We find that the following definitions are meaningful in ascertaining the legislature's intent regarding N.C.G.S. 115C-325(e)(1)(f):

*Excess*: "something that exceeds what is usual, proper, proportionate . . . undue or immoderate indulgence . . . a state of surpassing or going beyond limits." Webster's Third New International Dictionary 792 (1971).

*Proper*: "marked by suitability, fitness, accord, compatibility." *Id.* at 1817.

*Temperate*: "moderate in indulgence of appetite or desire . . . self-controlled." *Id.* at 2352.

*Temperance*: "moderation in or abstinence from the use of intoxicating drink." *Id.*

*Example*: "a pattern or representative action or series of actions tending or intended to induce one to imitate or emulate." *Id.* at 791.

Our inquiry focuses on the intent of the legislature with specific application to teachers who are entrusted with the care of small children and adolescents. We do not hesitate to conclude that these men and women are intended by parents, citizenry, and lawmakers alike to serve as good examples for their young charges. Their character and conduct may be expected to be above those of the average individual not working in so sensitive a relationship as that of teacher to pupil. It is not inappropriate or unreasonable to hold our teachers to a higher standard of personal conduct, given the youthful ideals they are supposed to foster and elevate. *See generally* E. Reutter and R. Hamilton, *The Law of Public Education* (2d ed. 1976). *See also* 68 Am. Jur. 2d *Schools* §§ 176-177 (1973).

Based on the foregoing, we hold that the defendant, New Bern-Craven County Board of Education, was entirely proper in concluding that a course of conduct involving the use of alcohol by a teacher on school property during school hours, the same being obvious to his students and other school personnel and parents, repeated after continued warnings, is "excessive" within the meaning of N.C.G.S. 115C-325(e)(1)(f). Having properly found this

course of conduct to exist, the defendant board acted lawfully in exercising its authority to dismiss Terry Faulkner.

The decision of the Court of Appeals is

Reversed.

Justice EXUM dissenting.

The majority opinion does not address the question raised by plaintiff concerning the admissibility, or competency, of the hearsay evidence adduced against plaintiff on the ground that the "testimony of the witnesses Hardison, Motley, and Rice alone support the Board's decision" that plaintiff engaged in the "habitual or excessive use of alcohol" in violation of N.C. Gen. Stat. § 115C-325(e)(1)(f). The majority's decision reversing the Court of Appeals is based solely on its consideration of the testimony of these three witnesses.

First, I think the majority correctly restricts its consideration of the case to the testimony of the three witnesses named because the other hearsay, and in some cases double hearsay, evidence was, as plaintiff contends, incompetent and should not have been considered by the Board. Indeed, the Board itself apparently ignored most of this hearsay evidence. Except for its finding No. 8, referring to "other complaints" received by the principal and superintendent "during the early part of the 1981-82 school year," the Board's findings on the alcohol use issue, findings Nos. 4, 6 and 7, rest exclusively on the testimony of Hardison, Motley and Rice. The Board in its Court of Appeals brief, page 14, noted that evidence of Hardison's student interviews "did not form the basis for any findings or conclusions by the Board." The majority has now determined that the Board's decision on the alcohol use issue may be sustained on the basis solely of the Board's findings Nos. 4, 6 and 7.

The witness Hardison, who was principal of the school, testified that near the beginning of the 1980-81 school year he detected what he "believed to be the smell of alcohol" on plaintiff's breath. Plaintiff then denied that he had been drinking. Hardison, the school principal, asked Mrs. Satz, a school counselor and friend of the plaintiff, if she would consult with plaintiff about this conduct. Apparently plaintiff taught throughout the

1980-81 school year without further incident. At least there is no evidence of any violation on his part during that school year. Motley, a parent, testified that during the first week of the 1981-82 school year at the end of the school day she "believed" she recognized the odor of alcohol on plaintiff's breath. She also testified that plaintiff "was very, very nice. I asked him for the assignments, and, you know, he offered to help me, you know, go to Phillip's locker and get his books, which we did; and he gave me his books and his assignments; and I left. You know, I was maybe in his presence maybe just a few minutes, three minutes, maybe." Finally, Rice, a teacher, testified that she smelled alcohol on plaintiff's breath at a teacher's workday before the opening of the 1981-82 school year. After school opened "once or twice, at least—maybe twice; not any more," Rice smelled alcohol on plaintiff's breath in the morning before the tardy bell.

In addition to his own testimony that he had never drunk alcoholic beverages at school, plaintiff offered the testimony of the assistant principal and five teachers from MacDonald School who had known and worked with him for at least seven years and some for his entire twelve-year teaching career at the school. These witnesses had almost daily contact with the plaintiff during both the 1980-81 and 1981-82 school years. All of them testified that they had never smelled the odor of alcohol on plaintiff's breath. Several of these witnesses testified to plaintiff's good reputation among his peers and the orderliness with which he conducted his classes. On cross-examination, Hardison, the principal, testified that he had daily contact with plaintiff during the 1980-81 school year and at no time during this period, except for the one occasion at the year's beginning, did he smell alcohol on plaintiff's breath. Hardison evaluated plaintiff as follows:

> His strengths as a teacher I have found over the years has been his ability to manage his classroom, his ability to project an aura of being in control of his classroom, his organizational and his training knowledge in the area he was assigned to teach, and most especially, language arts; just, in my impression, has been and is, a talented and well-prepared and well-trained, and gifted in that area.

The upshot, therefore, of the evidence against this able, career teacher is that during two of his twelve years as a teacher

at MacDonald School one person smelled and two persons "believed" they smelled alcohol on his breath—once at the beginning of the 1980-81 school year and no more than three times at the beginning of the 1981-82 school year. When this testimony is weighed against the evidence favorable to plaintiff in the application of the "whole record" standard, I am satisfied that it does not support the Board's conclusion that plaintiff has made habitual or excessive use of alcohol so as to justify his dismissal on this ground.

I am further satisfied for the reasons stated in the opinion of the Court of Appeals that the evidence fails as well to support the Board's conclusion that plaintiff failed to fulfill the duties and responsibilities imposed upon teachers within the meaning of N.C. Gen. Stat. § 115C-325(e)(1)(i).

I vote to affirm the decision of the Court of Appeals.

Justice FRYE joins in this dissenting opinion.