VIVIAN M. CRUMP v. THE DURHAM COUNTY BOARD OF EDUCATION

No. 8414SC383

(Filed 2 April 1985)

1. Schools § 13.2— dismissal of career teacher—not arbitrary

   Petitioner's dismissal from her teaching job was not "arbitrary, capricious and for personal reasons" where the record clearly showed a thoughtful, patient, persistent, but unavailing effort by the school authorities to get petitioner to recognize that she was not properly controlling her classes and to correct the situation. Moreover, the five members of the independent Professional Review Committee unanimously agreed that the charge that she had inadequately performed her job as a schoolteacher had been substantiated. G.S. 115C-325.

2. Schools § 13.2— dismissal of career teacher—statute not unconstitutionally vague

   G.S. 115C-325(d)(1), which authorizes the dismissal of a career teacher for inadequate performance, is not unconstitutionally vague because the term "inadequate performance" can be readily understood by any person of ordinary intelligence who knows what a job entails. Furthermore, petitioner clearly understood that her job as a schoolteacher entailed maintaining good order and discipline in the classroom. G.S. 115C-307(a).

Crump v. Durham Co. Board of Education

**3. Schools § 13.2— dismissal of career teacher—supported by evidence**

There was substantial evidence to support petitioner's dismissal for inadequate performance as a teacher under the whole record test where, according to the testimony of three professional educators who had seen or heard students misbehave in petitioner's classroom on many different occasions, petitioner maintained an unruly, chaotic, noisy, and disruptive classrooom and was apparently content to maintain such a classroom over a long period of time.

**4. Schools § 13.2— dismissal of career teacher—arguments irrelevant or not supported by evidence**

Where petitioner was a career teacher dismissed for not maintaining classroom discipline, her argument that she had more than her share of problem students was not supported by the evidence, including her own testimony, and her argument that her classroom control was no worse than other teachers was irrelevant and at variance with the evidence that the misconduct which occurred in petitioner's classroom did not occur in other rooms even though all of petitioner's students were in other classrooms for six periods each day.

APPEAL by petitioner from *Bowen, Judge.* Judgment entered 16 January 1984 in Superior Court, DURHAM County. Heard in the Court of Appeals 30 November 1984.

The respondent Board of Education, after a hearing, dismissed petitioner from her school teaching job on the grounds of inadequate performance. Her dismissal had been recommended by the Superintendent of Durham County Schools and was approved by the Professional Review Committee. The decision of the respondent Board was reviewed and affirmed by the Superior Court and petitioner's appeal is therefrom.

During the hearings conducted by the Professional Review Committee and the respondent Board evidence to the following effect was presented: In August, 1983 petitioner had been a junior high school teacher in the Durham County school system for twenty-seven years and was then assigned to Chewning Junior High School, where she had taught science for several years. During the 1980-81 school term there were many disciplinary problems in petitioner's classroom, and at the end of the term the school principal, Mr. Barry, discussed these problems with her. Shortly before the 1981-82 school term began respondent received a letter from a student's parent complaining of petitioner's failure to maintain order in her classroom during the preceding term. The letter, which listed several specific disturbances by students that petitioner allegedly did nothing about, was put in her person-

nel file. After that Principal Barry and Mr. Gatling, the co-ordinator of mathematics and science teaching programs in the county, met with petitioner and suggested ways that she could improve both her classroom control and teaching effectiveness, and Gatling made periodic visits to petitioner's classroom. At the end of the 1981-82 school term Principal Barry again recommended that petitioner take various steps to improve classroom discipline and placed her on marginal status. During the second semester of the 1982-83 school term Principal Barry visited petitioner's classroom often and noted many instances of uncorrected student misconduct. He saw or heard, among other things, students walking around, talking and laughing loudly, and ignoring petitioner's pleas for quiet; students squirting water on each other, throwing papers at each other and the teacher, and climbing in and out of windows; the classroom door opened and closed many times with a bang; students playing cards and reading materials other than those assigned; and students misusing text-books and audio-visual aids. Four other teachers complained to him during that time about petitioner's failure to control her classes at different times of the day. Mr. Gatling testified that during his visits to petitioner's classroom he also saw and heard many uncorrected instances of student misbehavior and specified what they were. Both Principal Barry and Mr. Gatling advised petitioner in writing of the various delinquencies noted, made specific suggestions for improving her classroom discipline and teaching techniques, required her to observe the classroom methods of an exemplary teacher in another school for a week and the respondent Board paid her substitute; but neither petitioner's control of her class nor her teaching methods improved. Ms. Fletcher, a teacher whose classroom was next to petitioner's, testified that her classes were often disturbed by students in petitioner's classroom yelling, banging on the walls, and making other loud noises, and that the only week during the Spring of 1983 that her classes were not so disturbed was when petitioner was away and a substitute teacher had her class. In April, 1983 the county school superintendent recommended that petitioner be dismissed from her teaching job on the grounds of inadequate performance. This recommendation was approved by the Peer Review Committee in June, 1983 and she was dismissed by the respondent Board on August 15, 1983.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for petitioner appellant.*

*Maxwell, Freeman, Beason and Morano, by James B. Maxwell and Mark R. Morano, for respondent appellee.*

PHILLIPS, Judge.

[1] Petitioner's first contention that her constitutional rights to due process and equal protection have been violated because her dismissal was "arbitrary, capricious and for personal reasons" is rejected without discussion, because nothing in the record supports, much less requires, such a conclusion. What the record clearly shows, we think, is a thoughtful, patient, persistent, but unavailing, effort by the school authorities to get petitioner to recognize that she was not properly controlling her classes and to correct the situation; it does not indicate any hasty, arbitrary, capricious or ill-founded action on their part. For that matter, much more than impulse is needed under our law to discharge a career teacher. *See* G.S. 115C-325. A ground for dismissal specified by the statute must be asserted; the Board must find from a preponderance of the evidence that the ground for dismissal is true; and an exacting procedure designed to protect the teacher's rights, one of which is to have the evidence for and against dismissal appraised by an impartial panel comprised of teachers, administrators and laymen, must be followed. Corroborative of our holding on this point is the fact that when petitioner exercised her right to have the charge against her independently evaluated the five members of the Professional Review Committee, who heard the testimony presented by both parties and saw the witnesses face to face, *unanimously* agreed that the charge that she had inadequately performed her job as a schoolteacher had been substantiated.

[2] The petitioner's second contention that G.S. 115C-325(d)(1), which authorizes the dismissal of a career teacher for "inadequate performance," is unconstitutionally void for vagueness is likewise overruled. That question was considered and rejected in *Nestler v. Chapel Hill/Carrboro City Schools Board of Education*, 66 N.C. App. 232, 311 S.E. 2d 57, *appeal dismissed, rev. denied*, 310 N.C. 745, 315 S.E. 2d 703 (1984), for the reason that the term "inadequate performance" in regard to a job can be readily understood

by any person of ordinary intelligence who knows what the job entails. Nor is the statute unconstitutional as applied in this case to petitioner. The evidence clearly shows that she was aware that her job as a schoolteacher entailed maintaining good order and discipline in the classroom, as G.S. 115C-307(a) provides, and that her alleged failure to maintain good classroom order on numerous, specific occasions was the basis for the steps taken to dismiss her.

[3] Petitioner's final contention, that in view of the whole record there is no substantial evidence to support her dismissal for inadequate performance of her job, is likewise without merit and is overruled. That the evidence referred to above substantially supports the conclusion that petitioner inadequately performed her duty to maintain good order and discipline in the classroom is, we think, self-evident. Though it is fundamental and generally known that students cannot effectively learn and teachers cannot effectively teach in an unruly, chaotic, noisy, disruptive classroom, that is just the kind of classroom that petitioner had and was apparently satisfied to have over a long period of time, according to the testimony of the three professional educators who had seen or heard students misbehave in her classroom on many different occasions. The only evidence of probative value that might detract from all this direct evidence of petitioner's failure to maintain good order in her classroom, and therefore must be considered under the "whole record" test laid down in *Thompson v. Wake County Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977), is the following: Petitioner's testimony that some of the disorders that occurred during Principal Barry's surveillance of her classroom were aggravated by *his* failure to correct the misbehaving students, but the duty to maintain control of the classroom was hers, not his, as she conceded; and the testimony of one of petitioner's many students that she is a good teacher. The other testimony on her behalf—by her pastor and several members of her church, where she had taught Sunday School and been a Deacon for several years, to the effect that she is a good, conscientious and efficient person in handling young people—really does not address the specific issue raised. In all events, all of the other evidence relating to petitioner's classroom control by whoever presented detracts not a whit from the great volume of direct evidence that the respondent Board presented as to petitioner's failure to maintain any semblance of good order and discipline in her classroom on innumerable occasions.

[4] The argument that petitioner's failure to maintain order was because she had more than her share of problem students is not supported by the evidence, including petitioner's own testimony. And the further argument that her classroom discipline and control was no worse than that maintained by other teachers is both irrelevant and at variance with much evidence and the Board's finding that the disturbing misconduct that repeatedly occurred in petitioner's classroom did not occur in other rooms, even though all of petitioner's students were in other classrooms for six periods each school day.

Affirmed.

Judges WHICHARD and JOHNSON concur.