JOSEPH H. BARRINGER, Petitioner/Appellant, v. CALDWELL COUNTY BOARD OF EDUCATION, Respondent/Appellee

No. COA94-962

(Filed 6 August 1996)

1. **Schools § 154 (NCI4th)— immorality of teacher—standard related to teacher's fitness for service—constitutionality of statute**

   N.C.G.S. § 115C-325(e)(1)b implicitly requires the "immorality" of a career teacher to be in relation to, or to affect, that teacher's work, before the teacher may be dismissed or demoted upon such ground; thus, just as "inadequate performance" reflects a standard of skill expected in the performance of a teaching job, "immorality" in the context of teacher dismissal signifies a standard directly related to the teacher's fitness for service, and the statute therefore is not unconstitutionally vague.

   **Am Jur 2d, Constitutional Law § 818.**

   **Indefiniteness of language affecting validity of criminal legislation or judicial definition of common-law crime. 16 L. Ed. 2d 1231.**

   **Supreme Court's application of vagueness doctrine to noncriminal statutes or ordinances. 40 L. Ed. 2d 823.**

   **Supreme Court's views on weight to be accorded to pronouncements of legislature, or members of legislature, respecting meaning or intent of previously enacted statute. 56 L. Ed. 2d 918.**

2. **Schools § 154 (NCI4th)— teacher dismissed after immoral conduct—statute constitutional as applied to plaintiff**

   N.C.G.S. § 115C-325(e)(1)b was constitutional as applied to plaintiff in this case when the teacher was dismissed after pleading guilty to first-degree trespass, since a reasonable public school teacher of "ordinary intelligence" and utilizing "common understanding" would know that approaching a crowded pool room located in the general community where one serves as a teacher in the early morning hours and armed with a fully loaded shotgun and a sidearm, and subsequently proffering an explanation indicative of a violent intent, constituted conduct likely to become known to the general student population at the school

where the teacher was employed, and would reflect to the teacher's young charges a poor example manifesting approval of violence and taking the law into one's own hands, consequently placing the teacher's professional position in jeopardy.

**Am Jur 2d, Public Officers and Employees § 244; Schools § 156.**

**Indefiniteness of language affecting validity of criminal legislation or judicial definition of common-law crime. 16 L. Ed. 2d 1231.**

**Supreme Court's application of vagueness doctrine to noncriminal statutes or ordinances. 40 L. Ed. 2d 823.**

Appeal by petitioner from order entered 14 March 1994 by Judge Robert Burroughs in Caldwell County Superior Court. Heard in the Court of Appeals 10 May 1995.

*Carpenter, Bost & Cartee by John F. Bost, III, and John G. McCormick, P.A., by John G. McCormick, for petitioner-appellant.*

*Cannon & Blair, P.A. by Edward H. Blair, Jr., and Bennett & Blancato, by William A. Blancato, for respondent-appellee.*

*Tharrington, Smith & Hargrove by Ann L. Majestic and Rod Malone, for North Carolina School Boards Association, Inc., Amicus Curiae Brief.*

*Attorney General Michael F. Easley, by Assistant Attorney General Barbara A. Shaw, for the state.*

JOHN, Judge.

Petitioner Joseph H. Barringer contends the trial court erred by affirming his dismissal as a career teacher by respondent Caldwell County Board of Education (the Board). We disagree.

Petitioner, prior to the events giving rise to his dismissal, was a mathematics teacher at West Caldwell High School (West Caldwell) with 15 years experience and career tenure status under the provisions of N.C.G.S. § 115C-325. The Board represents the duly-constituted public body charged by law with operation of the Caldwell County Public School System. *See* N.C.G.S. § 115C-1, *et. seq.*

BARRINGER v. CALDWELL COUNTY BD. OF EDUC.

[123 N.C. App. 373 (1996)]

Pertinent factual and procedural background is as follows: At approximately 12:28 a.m. on 20 March 1993, petitioner began approaching the entrance of Pat's Pool Room (the pool room), located in Hickory, N.C., armed with a 12-gauge, short barrel, pump shotgun, fully loaded with one shell in the chamber. Three shells, known as "fleschette" or anti-personnel shells, contained small metal arrows as opposed to pellets. In his waistband, petitioner also carried a loaded .38 caliber pistol partially covered by his jacket.

Two Hickory Police Department officers were among the 60-100 persons present within the pool room premises. The officers observed a number of patrons suddenly vacate the front door area screaming that someone was outside armed with a gun. Opening the front door, the two observed petitioner facing the entrance approximately three or four feet away, holding the shotgun so that the barrel was pointing in the general direction of the door. The officers ordered petitioner to put the gun down; after several requests, he ultimately complied. He then placed his hands above his head, and was approached by the two police officers who removed the handgun from his waistband.

When asked what he was doing at that location, petitioner replied he was "looking for a friend." Upon an officer's further inquiry, "[W]hy, to show him the gun?", petitioner responded "no, to show him the bullets."

Petitioner was then arrested and charged with going armed to the terror of the public and carrying a concealed weapon. He subsequently pled guilty to first degree trespass and received a six months sentence, suspended upon three years supervised probation. The incident was publicized in area newspapers, radio stations, and spread by word-of-mouth among students, parents, faculty, and staff at West Caldwell. Petitioner later requested and was granted a leave of absence by Ken Roberts, Superintendent of Caldwell County Schools (the Superintendent).

On 10 August 1993, the Superintendent initiated suspension and dismissal procedures against petitioner. Pursuant to G.S. § 115C-325(h) and (i), a Professional Review Committee hearing was held 28 September 1993. Testimony was presented by the police officers present at the pool room when petitioner was arrested, as well as by a West Caldwell parent, teachers, the principal, and a guidance counselor at West Caldwell. The latter group of witnesses acknowledged petitioner had been an excellent classroom teacher, but agreed

that serving as a role-model and teaching non-violent avenues of conflict-resolution constituted additional responsibilities for teachers at West Caldwell, a school which had experienced recent problems with violence and gun possession on campus. The Committee thereafter unanimously joined the Superintendent's recommendation that petitioner be dismissed.

The Board took up the matter 26 October 1993, reviewing the recommendation of the Superintendent, as well as the evidence presented to the Professional Review Committee and the Committee's report. Within its order issued the same date, the Board set out detailed findings of fact, concluded petitioner was subject to dismissal under either G.S. § 115C-325(e)(1)b ("immorality") or § 115C-325(e)(1)k ("any cause [constituting] grounds for revocation of [a] career teacher's license"), and ordered petitioner "dismissed as a career teacher from the Caldwell County Public School System."

Petitioner thereupon sought judicial review by the Caldwell County Superior Court pursuant to Chapter 150B of the North Carolina General Statutes. By order filed 14 March 1994, the trial court affirmed the Board's dismissal of petitioner. The latter's notice of appeal to this Court was filed 11 April 1994.

We note preliminarily that petitioner has categorized his "assignments of error" to the trial court's order as follows:

1. The Court's "Findings" Nos. 1 through 8.

. . . .

2. The Court's "Order".

Our Appellate Rules expressly provide that an assignment of error "shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C.R. App. P. 10(c)(1). Petitioner has in no way complied with the Rule, and is subject to sanctions including dismissal of his appeal. N.C.R. App. P. 25(b). We expressly disapprove of petitioner's formulation of his assignments of error and tax him with double the costs as computed by the Clerk.

Further, although petitioner has formulated and discussed three questions on appeal to this Court, only one was raised in his petition to the trial court as follows:

B. . . . .

(1) As to ground for dismissal G.S. § 115C-325(e)(1)b, the statute vesting in the School Board the power to dismiss teachers

for immorality without defining immorality is unconstitutionally vague because it fails to give fair warning of what conduct is prohibited and permits erratic and prejudiced exercises of authority; the statute is also unconstitutional by not requiring a nexus between conduct and teaching performance.

While our examination of this matter is restricted in the first instance to petitioner's assignments of error to the trial court's order, *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988), our review is

> further limited by the issues raised in the petition for judicial review made to the superior court. Issues not raised in the petition for judicial review [to the trial court] cannot be asserted as a basis in *this* Court for reversing the [Board's] decision.

*Air-A-Plane Corp. v. N.C. Dept. of E.H.N.R.*, 118 N.C. App. 118, 123, 454 S.E.2d 297, 300 (1995) (emphasis added). We therefore proceed to discuss the single argument preserved for our consideration in consequence of having been raised by petitioner both on appeal to this Court and in his petition for judicial review directed to the trial court.

[1] Petitioner asserts that G.S. § 115C-325(e)(1)b is unconstitutionally vague

> because it fails to give fair warning of what conduct is prohibited, fails to require a nexus between conduct and teaching performance, and permits erratic and prejudiced exercises of authority.

The trial court determined, as do we, petitioner's argument to be unfounded.

The statute which is the focus of petitioner's contention contains the following language:

> (e) Grounds for Dismissal or Demotion of a Career Teacher.
>
> (1) No career teacher shall be dismissed or demoted or employed on a part-time basis except for one or more of the following:
>
> . . . .
>
> b. Immorality
>
> . . . .

G.S. § 115C-325(e)(1)b. Petitioner's challenge to the constitutionality of this statute requires our *de novo* review of the trial court's determination. *See Overton v. Board of Education,* 304 N.C. 312, 316-317, 283 S.E.2d 495, 498 (1981) ("the standards for judicial review set forth in G.S. § 150A-51 [now N.C. Gen. Stat. § 150B-51] are applicable to appeals from school boards to the courts"); and *Owen v. UNC-G Physical Plant,* 121 N.C. App. 682, 686, 468 S.E.2d 813, 816 (1996) (pursuant to G.S. § 150B-51, "[w]hen reviewing an agency decision for constitutional . . . errors, this Court applies *de novo* review").

At the outset, we observe petitioner carries a heavy burden in contesting the constitutionality of a state law. *Smith v. Wilkins,* 75 N.C. App. 483, 485, 331 S.E.2d 159, 161 (1985). A strong presumption exists in favor of constitutionality, and a statute will not be declared unconstitutional unless it is clearly so, *Tetterton v. Long Manufacturing Co., Inc.* 314 N.C. 44, 49, 332 S.E.2d 67, 70 (1985), or the statute cannot be upheld on any reasonable ground. *Ramsey v. Veterans Comm.,* 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). Moreover, "a mere doubt [as to constitutionality] does not afford sufficient reason for a judicial declaration of invalidity." *Vinson v. Chappell,* 3 N.C. App. 348, 350, 164 S.E.2d 631, 633 (1968).

In addition, petitioner's assertion notwithstanding, the United States Supreme Court has held that a civil statute overcomes a challenge on grounds of vagueness merely by conveying a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices," and that "difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness." *Jordan v. De George,* 341 U.S. 223, 231-32, 95 L.Ed. 886, 892 (1951) (upholding constitutionality of statute establishing conviction of crime involving "moral turpitude" as grounds for deportation). Vagueness challenges such as that of petitioner not involving First Amendment interests are to be analyzed as applied to the facts of the case at issue, and "where reasonable persons would know that their conduct is at risk," the statute should be upheld. *Maynard v. Cartwright,* 486 U.S. 356, 361, 100 L.Ed.2d 372, 380 (1988).

Further, our North Carolina Supreme Court has stated that terminology such as "good moral character" denoting acceptable and unacceptable standards of behavior has been

so extensively used as a standard that its long usage and the case law surrounding that usage have given the term well-defined contours which make it a constitutionally appropriate standard.

*In re Willis*, 288 N.C. 1, 11, 215 S.E.2d 771, 777, *app. dismissed*, 423 U.S. 976, 46 L.Ed.2d 300 (1975) (rejecting argument that "good moral character" is a constitutionally inadequate standard by which Board of Law Examiners might determine fitness for admission to Bar).

Moreover, although our Courts have had no prior occasion to rule upon the constitutionality of "immorality" as a ground for teacher dismissal, this Court in such a context has twice upheld "inadequate performance," *see* G.S. § 115C-325(e)(1)(a), as constitutional. *Crump v. Durham Co. Board of Education*, 74 N.C. App. 77, 80, 327 S.E.2d 599, 601 (1985); *Nestler v. Chapel Hill/Carrboro Bd. of Educ.*, 66 N.C. App. 232, 238, 311 S.E.2d 57, 60 (1984). We reasoned that the phraseology

'inadequate performance' *in regard to a job*, can be readily understood by any person of ordinary intelligence who knows what the job entails,

*Crump*, 74 N.C. App. at 80-1, 327 S.E.2d at 601 (emphasis added), and provides

an objective standard with which a person of ordinary understanding [can] determine how he must comply.

*Nestler*, 66 N.C. App. at 238, 311 S.E.2d at 60.

To serve as grounds for dismissal of a career teacher, therefore, "immorality" must be viewed in the context of or "in regard to a [teaching] job." *Crump*, 74 N.C. App. at 80, 327 S.E.2d at 601. In other words, we find unpersuasive petitioner's argument that the statute unconstitutionally fails to require a nexus between conduct and teaching performance. To the contrary, the statute implicitly requires the "immorality" of a career teacher to be in relation to, or to affect, that teacher's work, before the teacher may be dismissed or demoted upon such ground. Thus, just as "inadequate performance" reflects a standard of skill expected in the performance of a teaching job, *see Crump* at *id.* and *Nestler* at *id.*, "immorality" in the context of teacher dismissal signifies a standard directly related to the teacher's fitness for service. To hold otherwise would defeat the legislative purpose of maintaining career teachers within their positions, a purpose explicitly signified by the statutory prohibition against dismissal of a career teacher save in specific enumerated instances.

The majority of jurisdictions addressing the issue have reached a similar conclusion. For example, in *Weissman v. Board of Education of Jefferson County School District No. R—1*, 547 P.2d 1267 (Colo. 1976), a tenured teacher was dismissed on the statutory basis of "immorality." He subsequently asserted the statute was unconstitutional as excessively vague and lacking a nexus between the prohibited conduct and the teacher's classroom effectiveness. *Id.* at 1272.

The Colorado court first held the statute implicitly required such a nexus, observing the legislative intent was not

> to potentially subject every teacher to discipline, even dismissal, for private peccadillos or personal shortcomings that might come to the attention of the board of education, but yet have little or no relation to the teacher's relationship with his students, his fellow teachers, or with the school community.

*Id.* at 1272-73. Interpreting "immorality" only "insofar as [it] relate[s] to the teacher's unfitness to teach," the court then held the statute to be "sufficiently precise to meet minimal due process standards" and rejected petitioner's challenge for vagueness. *Id.* at 1275. *See also Thompson v. Southwest Sch. Dist.*, 483 F. Supp. 1170 (W.D. Mo. 1980); *Morrison v. State Bd. of Educ.*, 461 P.2d 375 (Ca. 1969); and *Golden v. Bd. of Educ.*, 285 S.E.2d 665 (W.Va. 1981).

In *Hainline v. Bond*, 824 P.2d 959 (Kan. 1992), the Kansas court determined that "immorality" as used in its teacher certificate revocation statute meant "such conduct that by common judgment reflects on a teacher's fitness to engage in his or her profession." *Id.* at 967. The court reasoned that

> [i]t would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct . . . . Nor does any such failure leave the statute subject to attack on grounds of vagueness or indefiniteness.

*Id.* The dismissed teacher was on adequate notice that burglary was prohibited within the term "immorality," the court held, observing that one of the goals of education was to instill respect for the law and that teachers consequently were expected to serve as role models. *Id.* at 965. *See also Frison v. Franklin County Bd. of Educ.*, 596 F.2d 1192, 1194 (4th Cir. 1979) (North Carolina statutes "prescribing a teacher's speech and conduct are necessarily broad; they cannot pos-

sibly mention every specific kind of misconduct," and consequently, demoted career teacher had "sufficient notice that her conduct [reading intercepted student note containing "vulgar colloquialisms" out loud to class] was unacceptable").

The solitary authority relied upon by petitioner, *Burton v. Cascade School Dist. Union High School No. 5*, 353 F. Supp. 254 (D. Oregon 1973), *cert. denied*, 423 U.S. 839, *aff'd*, 512 F.2d 850 (9th Cir. 1975), is neither controlling authority in this jurisdiction, *see State v. Richards*, 294 N.C. 474, 492, 242 S.E.2d 844, 851 (1978), nor persuasive, and further is distinguishable by failure of the court therein to follow the rule that statutes are to be construed whenever possible so as to uphold their constitutionality. *See Tetterton v. Long Manufacturing Co., Inc.* 314 N.C. 44, 49, 332 S.E.2d 67, 70 (1985) and, *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 841, 92 L.E.2d 675, 686 (1986) ("statutes are to be so construed as to avoid serious doubt of their constitutionality").

**[2]** Having determined "immorality" in the context of dismissal of a career teacher to mean such conduct that by common judgment reflects upon a teacher's fitness to teach, we now examine petitioner's argument that the statute is unconstitutionally vague as applied to the facts at hand. *See Maynard*, 486 U.S. at 361, 100 L.Ed.2d at 380.

First, petitioner's contention the statute fails to give fair warning of what conduct is prohibited does not withstand scrutiny. As a public school teacher, petitioner bore the legal obligation to maintain discipline in school and to encourage temperance and morality. G.S. § 115C-307(a) and (b) ("It *shall* be the duty of all teachers . . . to maintain good order and discipline . . . [and] to encourage temperance [and] morality . . . ." (emphasis added)). Moreover, our Supreme Court has emphasized that teachers, in addition to being required to teach a particular subject, also serve as role models for their students in that teachers are:

intended by parents, citizenry, and lawmakers alike to serve as good examples for their young charges. Their character and conduct may be expected to be above those of the average individual not working in so sensitive a relationship as that of teacher to pupil. It is not inappropriate or unreasonable to hold our teachers to a higher standard of personal conduct, given the youthful ideals they are supposed to foster and elevate.

*Faulkner v. New Bern-Craven Bd. of Educ.*, 311 N.C. 42, 59, 316 S.E.2d 281, 291 (1984).

Accordingly, a reasonable public school teacher of "ordinary intelligence," *Crump*, 74 N.C. App. at 81, 327 S.E.2d at 601, and utilizing "common understanding," *Jordan v. De George*, 341 U.S. at 232, 95 L.Ed. at 892, would know that approaching a crowded pool room located in the general community where one serves as a teacher, in the early morning hours and armed with a fully-loaded shotgun and a sidearm, and subsequently proffering an explanation indicative of a violent intent, constituted conduct likely to become known to the general student population at the school where the teacher was employed, and would reflect to the teacher's "young charges," *Faulkner*, 311 N.C. at 59, 316 S.E.2d at 291, a poor example manifesting approval of violence and taking the law into one's own hands, consequently placing the teacher's professional position in jeopardy. *See Maynard v. Cartwright*, 486 U.S. at 361, 100 L.Ed.2d at 380.

Indeed, the law enforcement Arrest Report involving petitioner listed his occupation as "self-employed carpenter." Because this information apparently was derived from petitioner, it suggests an awareness on the part of petitioner that his conduct on the night in question bore a relation to his performance as a teacher. Were petitioner not concerned his actions placed his position as career teacher "at risk," *see Maynard* at *id.*, the correct information presumably would have been provided to the officers.

Moreover, petitioner's argument that the statute "permits erratic and prejudiced exercises of authority" is contradicted by the Board's determination in its findings of fact of the required nexus between petitioner's "immorality" and his ability to perform the job of teacher:

14. As a result of Mr. Barringer's conduct and actions on March 20, 1993 at Pat's Pool Room and the publicity and notoriety that conduct received, his ability to effectively function as a teacher has been substantially and appreciably adversely affected; his ability to effectively serve as a role model to his own students and the other students at West Caldwell has been seriously impaired; his credibility in maintaining discipline and order, controlling weapons or incidents of violence on campus, and conveying the lessons of good citizenship have been damaged. Mr. Barringer has offered no explanation for his conduct or any extenuating circumstances. The incident constituted an immoral and highly dangerous conduct that, had law enforcement officers

not happened to be at the scene, was likely to have led to violent injury or death of innocent people; the example of his conduct violates every important principal [sic] of good citizenship that the teaching profession aims to impart to students.

Based on the foregoing, we hold that G.S. § 115C-325(e)(1)b is constitutional, both as written and as applied to the circumstances *sub judice,* and affirm the order of the trial court.

Affirmed.

Judges COZORT and WALKER concur.